# 21-2166-cr(L), 21-2224-cr(CON)

# United States Court of Appeals

### *for the*

## Second Circuit

UNITED STATES OF AMERICA,

*Appellee,*

– v. –

DANIEL SCOTT,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT, NEW HAVEN

## APPENDIX FOR DEFENDANT-APPELLANT

RICHARD MARQUETTE
GOLDBLATT, MARQUETTE
& RASHBA, P.C.
*Attorneys for Defendant-Appellant*
60 Washington Avenue, Suite 302
Hamden, Connecticut 06518
(203) 687-4050

**i**

## TABLE OF CONTENTS

                                                                           **Page**

Docket Entries...............................................................    A-1

Plea Agreement, entered on March 9, 2021 ..............    A-11

Transcript of Plea Hearing, on March 9, 2021...........    A-21

Transcript of August 19, 2021 Sentencing Hearing...    A-78

Judgement, entered on August 23, 2021, Appealed
     From.......................................................................    A-131

Notice of Appeal, dated September 10, 2021 ............    A-135

Judgement, entered on August 24, 2021, Appealed
     From.......................................................................    A-137

Notice of Appeal, dated September 15, 2021 ............    A-139

A-1

APPEAL,CLOSED,EFILE,MOTREF,TOF,WIG

# U.S. District Court
## District of Connecticut (New Haven)
## CRIMINAL DOCKET FOR CASE #: 3:20–cr–00044–MPS–1

Case title: USA v. Scott

Magistrate judge case number: 3:20–mj–00220–WIG

Date Filed: 03/10/2020

Date Terminated: 08/23/2021

Assigned to: Judge Michael P. Shea
Referred to: Judge William I. Garfinkel

**Defendant (1)**

**Daniel Scott**
*TERMINATED: 08/23/2021*

represented by **Kelly M. Barrett**
Federal Public Defender's Office – NH
265 Church St., Suite 702
New Haven, CT 06510–7005
203–498–4200
Fax: 203–498–4207
Email: Kelly_barrett@fd.org
*TERMINATED: 07/07/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard C. Marquette**
Goldblatt, Marquette & Rashba, P.C.
60 Washington Ave.
Suite 302
Hamden, CT 06518
203–228–8867 (cell)
Fax: 203–288–0283
Email: rcmarquette@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

INTERSTATE
COMMUNICATIONS – THREATS
(Interstate Threats)
(1)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

INTERSTATE
COMMUNICATIONS – THREATS
(Interstate Threats)
(2–8)

**Disposition**

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 33 months, to run consecutively with his sentence in case 3:14–cr–00136; supervised release for a term of 3 years; special assessment of $100.

**Disposition**

Dismissed on the motion of the Government

A-2

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18:875C.F (Interstate Threats) | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Douglas P. Morabito** |
| | | Koskoff Koskoff & Bieder, PC |
| | | 350 Fairfield ave, 5th Floor |
| | | Bridgeport, CT 06604–6014 |
| | | 203–336–4421 |
| | | Email: dmorabito@koskoff.com |
| | | *TERMINATED: 06/17/2021* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Retained* |
| | | |
| | | **Natasha Freismuth** |
| | | U.S. Attorney's Office–NH |
| | | 157 Church St., 25th Floor |
| | | New Haven, CT 06510 |
| | | 203–821–3700 |
| | | Fax: 203–773–5389 |
| | | Email: Natasha.freismuth@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 03/03/2020 | 1 | COMPLAINT. Signed by Judge Robert A. Richardson as to Daniel Scott (1). (Attachments: # 1 Affidavit) (Reis, Julia) [3:20–mj–00220–WIG] (Entered: 03/03/2020) |
| 03/03/2020 | 3 | ELECTRONIC FILING ORDER FOR COUNSEL as to Daniel Scott – PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Robert A. Richardson on 3/3/2020. (Reis, Julia) [3:20–mj–00220–WIG] (Entered: 03/03/2020) |
| 03/04/2020 | 4 | MOTION for Pretrial Detention by USA as to Daniel Scott. (Morabito, Douglas) [3:20–mj–00220–WIG] (Entered: 03/04/2020) |
| 03/04/2020 | | Arrest of Daniel Scott (Torres, K.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |
| 03/04/2020 | 7 | Minute Entry for proceedings held before Judge William I. Garfinkel: Initial Appearance as to Daniel Scott held on 3/4/2020; Added attorney Kelly M. Barrett for Daniel Scott. granting 4 Motion for Pretrial Detention as to Daniel Scott (1); ( Probable Cause Hearing set for 3/18/2020 12:00 PM in Magistrate Judge Courtroom, 4th Floor, Room 435, 915 Lafayette Blvd., Bridgeport, CT before Judge William I. Garfinkel); Defendant detained. 15 minutes(Court Reporter FTR.) (Torres, K.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |
| 03/04/2020 | 8 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to Daniel Scott Signed by Judge William I. Garfinkel on 3/4/2020. (Torres, K.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |
| 03/04/2020 | 9 | ORDER OF DETENTION as to Daniel Scott. Signed by Judge William I. Garfinkel on 3/4/2020. (Torres, K.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |
| 03/04/2020 | 10 | SEALED CJA 23 Financial Affidavit by Daniel Scott (Torres, K.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |

A-3

| 03/05/2020 | 5 | ATTORNEY APPEARANCE: Kelly M. Barrett appearing for Daniel Scott (Barrett, Kelly) [3:20–mj–00220–WIG] (Entered: 03/05/2020) |
|---|---|---|
| 03/06/2020 | 6 | ORDER OF TRANSFER in case as to Daniel Scott Case reassigned to Judge William I. Garfinkel for all further proceedings, Signed by Judge Robert A. Richardson on 3/6/2020. (Blue, A.) [3:20–mj–00220–WIG] (Entered: 03/06/2020) |
| 03/10/2020 | 11 | INDICTMENT returned before Judge Janet Bond Arterton with the signature of the foreperson redacted. Grand jury number N–19–2 Detainer to issue as to Daniel Scott (1) count(s) 1–8. (Caffrey, A.) (Entered: 03/11/2020) |
| 03/10/2020 | 12 | Unredacted document with FOREPERSON'S SIGNATURE as to defendant(s)Daniel Scott. Access to the pdf document is restricted pursuant to Federal Rule of Criminal Procedure 49.1(e). (Caffrey, A.) (Entered: 03/11/2020) |
| 03/10/2020 | 14 | ELECTRONIC FILING ORDER FOR COUNSEL as to Daniel Scott – PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER Signed by Judge Michael P. Shea on 3/10/2020. (Caffrey, A.) (Entered: 03/11/2020) |
| 03/13/2020 | 15 | NOTICE of Related Case by Daniel Scott (Barrett, Kelly) (Entered: 03/13/2020) |
| 03/19/2020 | 16 | MOTION for Bond for release to Inpatient Treatment by Daniel Scott. (Barrett, Kelly) (Entered: 03/19/2020) |
| 03/20/2020 | 17 | ORDER. Mr. Scott's 16 motion for release to inpatient program is REFERRED to U.S. Magistrate Judge William I. Garfinkel.

Signed by Judge Michael P. Shea on 3/20/2020. (Hausmann, Amy) (Entered: 03/20/2020) |
| 03/20/2020 | 18 | ORDER REFERRING CASE to Judge William I. Garfinkel as to Daniel Scott 16 MOTION for Bond for release to Inpatient Treatment filed by Daniel Scott to Magistrate Judge Judge William I. Garfinkel Signed by Judge Michael P. Shea on 3/20/20. Motions referred to William I. Garfinkel(Johnson, D.) (Entered: 03/22/2020) |
| 03/22/2020 | 19 | NOTICE OF E–FILED CALENDAR as to Daniel Scott: Telephonic Hearing set for 3/23/2020 11:00 AM before Judge Stefan R. Underhill. The call–in for the hearing is 888.636.3807; when prompted for the access code, dial 650.8043 followed by #. (If asked whether to join the conference as the host, bypass that option by dialing #.) (Torres, K.) (Entered: 03/22/2020) |
| 03/23/2020 | 20 | ORDER Telephonic Hearing is cancelled as to Daniel Scott: set for 3/23/2020 11:00 AM before Judge Stefan R. Underhill re 19 Signed by Judge Stefan R. Underhill on 3/23/2020. (Jaiman, R.) (Entered: 03/23/2020) |
| 03/23/2020 | 21 | ORDER denying without prejudice 16 Motion for Bond as to Daniel Scott (1). Signed by Judge Stefan R. Underhill on 3/23/2020. (Jaiman, R.) (Entered: 03/23/2020) |
| 04/08/2020 | 22 | MOTION for Bond for Renewed Release to Inpatient Program by Daniel Scott. (Barrett, Kelly) (Entered: 04/08/2020) |
| 04/09/2020 | 23 | ORDER. The Government shall respond to the defendant's 22 renewed motion for release to an inpatient program by 12:00 PM on April 13, 2020. If the Government does not oppose the renewed motion, it should file a notice on the docket so indicating as soon as possible.

The Court will hold a telephonic hearing on the 22 motion on April 13, 2020 at 3:00 PM. Chambers will circulate dial–in information via email.

Signed by Judge Michael P. Shea on 4/9/2020. (Hausmann, Amy) (Entered: 04/09/2020) |
| 04/09/2020 | | Set Deadlines/Hearings as to Daniel Scott:(Telephonic Status Conference set for 4/13/2020 03:00 PM before Judge Michael P. Shea, Set Deadlines re Motion or Report and Recommendation in case as to Daniel Scott 22 MOTION for Bond for Renewed Release to Inpatient Program.(Responses due by 4/13/2020) (Johnson, D.) (Entered: 04/09/2020) |
| 04/13/2020 | 24 | Memorandum in Opposition by USA as to Daniel Scott re 16 MOTION for Bond for release to Inpatient Treatment, 22 MOTION for Bond for Renewed Release to Inpatient Program (Morabito, Douglas) (Entered: 04/13/2020) |

A-4

| 04/13/2020 | 25 | ORDER. For the reasons stated on the record during the telephone conference today –– which included the Court's consideration of all of the factors in 18 U.S.C. § 3142(g) and its finding that the defendant had not carried his burden to demonstrate that he did not pose a danger to the community, as required by Fed. R. Civ. Crim. P. 32.1 (because the case involves an alleged violation of supervised release in addition to a new criminal charge) –– the Court DENIES the motion for bond (ECF No. 22 ) and orders that the defendant remain detained. Signed by Judge Michael P. Shea on 4/13/2020. (Hausmann, Amy) (Entered: 04/13/2020) |
|---|---|---|
| 04/13/2020 | 26 | Minute Entry for proceedings held before Judge Michael P. Shea:Telephonic Status Conference as to Daniel Scott held on 4/13/2020 13 minutes(Court Reporter J. Monette.)(Johnson, D.) (Entered: 04/14/2020) |
| 04/23/2020 | 27 | NOTICE OF E–FILED CALENDAR as to Daniel Scott: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Initial Appearance and Arraignment set for 4/30/2020 10:00 AM before Judge Stefan R. Underhill. The call–in for the conference is 888.636.3807; when prompted for the access code, dial 650 8043 followed by #. (If asked whether to join the conference as the host, bypass that option by dialing #.) (Jaiman, R.) (Entered: 04/23/2020) |
| 04/30/2020 | 28 | Minute Entry for proceedings held before Judge Stefan R. Underhill:Arraignment, Initial Appearance and Detention Hearing as to Daniel Scott held on 4/30/2020, Plea of Not Guilty on counts 1–8. Defendant detained. and 8 minutes(Court Reporter Masse, S..)(Jaiman, R.) (Entered: 05/01/2020) |
| 04/30/2020 | | Set/Reset Deadlines/Hearings as to Daniel Scott: Jury Selection set for 7/8/2020 09:00 AM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea (Jaiman, R.) (Entered: 05/01/2020) |
| 05/13/2020 | 29 | Sealed Document: Letter by Daniel Scott (Johnson, D.) (Entered: 05/14/2020) |
| 05/14/2020 | 30 | ORDER. The Court docketed under seal the correspondence in ECF No. 29 , which was mailed to the Court and refers to Mr. Scott's relationship with his counsel. The correspondence was sent to Mr. Scott's counsel on May 14, 2020. The Court will take no action based on the correspondence. Instead, the Court will rely on Mr. Scott's counsel to review the document, communicate with Mr. Scott, and take whatever action counsel deems appropriate. Mr. Scott is reminded that sending documents either to the clerk's office or to a judge's chambers is not authorized since Mr. Scott has not perceived permission to proceed pro se. Since Mr. Scott is represented by counsel, all communications must take place through counsel of record. Signed by Judge Michael P. Shea on 5/14/2020. (Hausmann, Amy) (Entered: 05/14/2020) |
| 06/23/2020 | 31 | MOTION for Kelly M. Barrett to Withdraw as Attorney , MOTION to Appoint Counsel *(CJA)* by Daniel Scott. (Barrett, Kelly) (Entered: 06/23/2020) |
| 06/29/2020 | 32 | ORDER. The 31 motion for Kelly Barrett to withdraw as Mr. Scott's attorney is GRANTED. The Clerk shall appoint new counsel for Mr. Scott from the CJA panel. In addition, the Court will hold a telephonic status conference on **July 7, 2020 at 9:30 AM**. Signed by Judge Michael P. Shea on 6/29/2020. (Hausmann, Amy) (Entered: 06/29/2020) |
| 06/29/2020 | | Set Deadlines/Hearings as to Daniel Scott: Telephonic Status Conference set for 7/7/2020 09:30 AM Hartford, CT before Judge Michael P. Shea (Johnson, D.) (Entered: 06/30/2020) |
| 07/06/2020 | 33 | ATTORNEY APPEARANCE: Richard C. Marquette appearing for Daniel Scott (Attachments: # 1 Certification)(Marquette, Richard) (Entered: 07/06/2020) |
| 07/07/2020 | 34 | ORDER. As discussed on this morning's telephonic status conference, jury selection in this case is RESCHEDULED to **January 6, 2021**, with evidence to begin the following day. Rule 12(b)(3) motions will be due **October 21, 2020**; the Government's response to any such motions will be due **November 4, 2020**; if necessary, a hearing on any such motions will be held **November 6, 2020 at 10:00 AM**. In addition, the Court will hold an in–court status conference on **October 1, 2020 at 10:00 AM**. The defendant, his counsel, counsel for the Government, the undersigned, and two Deputy U.S. Marshals will be present in–person in the courtroom. All other persons (including the court reporter, other court staff, members of the defendant's family, and members of the public) will |

A-5

| | | participate via Zoom videoconference. The Court will post Zoom access information on the docket.<br><br>Signed by Judge Michael P. Shea on 7/7/2020. (Hausmann, Amy) (Entered: 07/07/2020) |
|---|---|---|
| 07/07/2020 | 35 | Minute Entry for proceedings held before Judge Michael P. Shea:Telephonic Status Conference as to Daniel Scott held on 7/7/2020 5 minutes(Court Reporter Julie Monette.)(Johnson, D.) (Entered: 07/07/2020) |
| 07/07/2020 | | Attorney update in case as to Daniel Scott. Attorney Kelly M. Barrett terminated. (Johnson, D.) (Entered: 07/07/2020) |
| 07/07/2020 | | Set Deadlines/Hearings as to Daniel Scott: Jury Selection set for 1/6/2021 09:00 AM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea. In−Court Status Conference set for 10/1/2020 10:00 AM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea (Johnson, D.) (Entered: 07/07/2020) |
| 09/23/2020 | 36 | Consent MOTION for Extension of Time to file Rule 12(b)(3) motions until November 21, 2020 by Daniel Scott. (Marquette, Richard) (Entered: 09/23/2020) |
| 09/23/2020 | 37 | Consent MOTION to Continue *October 1, 2020 "in person" status conference* by Daniel Scott. (Marquette, Richard) (Entered: 09/23/2020) |
| 09/25/2020 | 38 | ORDER. The defendant's (ECF Nos. 36 and 37 ) motions are GRANTED. The Rule 12(b)(3) motion shall be filed by **November 21, 2020.** The status conference previously schedule for October 1, 2020 has been rescheduled for **Tuesday, November 10, 2020 at 2:00 PM.** Signed by Judge Michael P. Shea on 9/25/2020. (Gait, Emily) (Entered: 09/25/2020) |
| 09/25/2020 | | Reset Deadlines/Hearings as to Daniel Scott: In−Court Status Conference set for 11/10/2020 02:00 PM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea (Johnson, D.) (Entered: 09/28/2020) |
| 10/20/2020 | 39 | USM Return of Service on Arrest Warrant executed as to Daniel Scott on 3/9/2020 (Reis, Julia) (Entered: 10/20/2020) |
| 10/27/2020 | | NOTICE regarding hearing via Zoom as to Daniel Scott: The Status Conference scheduled for November 10, 2020 at 2:00pm will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1613600726?pwd=bEE2azJBRlJyWGRWMmZwMmxuTkd6QT09 and call in number is 1 646 828 7666.<br><br>Meeting ID: 161 360 0726<br><br>Meeting Password: 981387<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Johnson, D.) (Entered: 10/27/2020) |
| 11/06/2020 | 40 | MOTION for Release from Custody by Daniel Scott. (Attachments: # 1 Exhibit redacted proposed bond package)(Marquette, Richard) (Entered: 11/06/2020) |
| 11/06/2020 | 41 | Certificate of Service by Daniel Scott re 40 MOTION for Release from Custody (Marquette, Richard) (Entered: 11/06/2020) |
| 11/06/2020 | 42 | MOTION to Seal Medical and therapist records, and unredacted bond proposal by Daniel Scott. (Marquette, Richard) (Entered: 11/06/2020) |
| 11/09/2020 | 43 | ORDER. The (ECF No. 42 ) motion to file medical and therapist records under seal is GRANTED. The records shall be filed AS SOON AS POSSIBLE. If they are filed by the close of business today, the government shall file its response to the motion for bond (ECF No. 40 ) by close of business on **Thursday, November 12, 2020.** Accordingly, the status conference is POSTPONED until **Friday, November 13, 2020 at 3:30pm,** at which time the Court will hear argument on the motion for bond. If the records are not filed by close of business today, then the government's response will be due 3 days after the records are filed. The Court will then schedule |

| | | |
|---|---|---|
| | | a fulsome status conference to address the motion for bond and any matters pertaining to the trial scheduled for January 6, 2021.<br><br>Signed by Judge Michael P. Shea on 11/9/2020. (Gait, Emily) (Entered: 11/09/2020) |
| 11/09/2020 | 44 | Sealed Document: Medical Records / Proposed Bond Package by Daniel Scott re 42 MOTION to Seal Medical and therapist records, and unredacted bond proposal – (Attachments: # 1 Exhibit medical records, # 2 Exhibit Proposed Bond Package)(Marquette, Richard) (Entered: 11/09/2020) |
| 11/09/2020 | | Set Deadlines re in case as to Daniel Scott 40 MOTION for Release from Custody . Responses due by 11/12/2020 (Johnson, D.) (Entered: 11/10/2020) |
| 11/10/2020 | 45 | Sealed Document: Therapist's Report by Daniel Scott re 42 MOTION to Seal Medical and therapist records, and unredacted bond proposal, 44 Sealed Document, 43 Order on Motion to Seal,,, – (Marquette, Richard) (Entered: 11/10/2020) |
| 11/10/2020 | | NOTICE regarding hearing via Zoom as to Daniel Scott: The Bond hearing scheduled for November 13, 2020 at 3:30pm will be conducted via Zoom.<br><br>The video link is https://www.zoomgov.com/j/1611999832?pwd=QUxFZVMyYjByQTZ5QVBjb2pwVW12QT09 and call in number is 16468287666.<br><br>Meeting ID: 161 199 9832<br><br>Meeting Password: 165681<br><br>Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Johnson, D.) (Entered: 11/10/2020) |
| 11/10/2020 | 46 | Memorandum in Opposition by USA as to Daniel Scott re 40 MOTION for Release from Custody (Morabito, Douglas) (Entered: 11/10/2020) |
| 11/11/2020 | 47 | MOTION for Release from Custody by Daniel Scott. (Marquette, Richard) (Entered: 11/11/2020) |
| 11/11/2020 | 48 | MOTION to Withdraw Document 40 MOTION for Release from Custody by Daniel Scott. (Marquette, Richard) (Entered: 11/11/2020) |
| 11/12/2020 | 51 | USM Return of Service on Arrest Warrant executed as to Daniel Scott on 3/4/2020 (Reis, Julia) (Entered: 11/16/2020) |
| 11/13/2020 | 49 | ORDER. For the reasons discussed on the record during the Zoom hearing, the (ECF Nos. 40 , 47 ) motion for release from custody is DENIED. The (ECF No. 48 ) motion to withdraw document 40 is denied as moot. The Court will hold a status conference on **November 30, 2020 at 2:00pm** via Zoom to discuss the trial scheduled for January 6, 2021.<br>Signed by Judge Michael P. Shea on 11/13/2020. (Gait, Emily) (Entered: 11/13/2020) |
| 11/13/2020 | 50 | Minute Entry for proceedings held before Judge Michael P. Shea:Bond Hearing as to Daniel Scott held on 11/13/2020, Motion Hearing as to Daniel Scott held on 11/13/2020 re 40 MOTION for Release from Custody filed by Daniel Scott, 47 MOTION for Release from Custody filed by Daniel Scott 10 minutes(Court Reporter J. Monette.)(Johnson, D.) (Entered: 11/13/2020) |
| 11/13/2020 | | Set Deadlines/Hearings as to Daniel Scott: Status Conference via of Zoom set for 11/30/2020 02:00 PM before Judge Michael P. Shea (Johnson, D.) (Entered: 11/16/2020) |
| 11/17/2020 | | NOTICE regarding hearing via Zoom as to Daniel Scott: The Status Conference scheduled for November 30, 2020 at 2:00pm will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1607940134?pwd=ZHJwdW1Hd0w3TzFDSkxJTFREU2xhdz09 and call in number is 16468287666.<br><br>Meeting ID: 160 794 0134<br><br>Meeting Password: 210272 |

| | | |
|---|---|---|
| | | Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Johnson, D.) (Entered: 11/17/2020) |
| 11/18/2020 | 52 | Consent MOTION for Extension of Time to file Rule 12(b)(3) motions until January 5, 2021 by Daniel Scott. (Marquette, Richard) (Entered: 11/18/2020) |
| 11/19/2020 | 53 | ORDER. The (ECF No. 52 ) motion for extension of time seeks until January 5, 2021 to file Rule 12(b)(3) motions. The Court assumes that defense counsel has discussed the motion, and its implications for the trial schedule, with his client. The motion is GRANTED. Rule 12(b)(3) motions shall be filed by **January 5, 2021.**<br><br>Signed by Judge Michael P. Shea on 11/19/2020. (Gait, Emily) (Entered: 11/19/2020) |
| 11/30/2020 | 54 | ORDER. For the reasons set forth on the record during the zoom status conference, and in light of the pandemic, the date for jury selection has been CONTINUED and the time between now and the new date for jury selection, May 5, 2021, is excluded for purposes of the Speedy Trial Act. Jury selection is scheduled for **May 5, 2021** with evidence to begin either immediately thereafter or in coordination with the Court's trial schedule. The Court will hold a telephonic status conference on **March 11, 2021 at 10:00am.** Chambers will circulate dial–in information via email.<br>Signed by Judge Michael P. Shea on 11/30/2020. (Gait, Emily) (Entered: 11/30/2020) |
| 11/30/2020 | | Set Deadlines/Hearings as to Daniel Scott: Telephonic Status Conference set for 3/11/2021 10:00 AM before Judge Michael P. Shea (Johnson, D.) (Entered: 12/01/2020) |
| 11/30/2020 | 55 | Minute Entry for proceedings held before Judge Michael P. Shea:Status Conference as to Daniel Scott held on 11/30/2020 13 minutes(Court Reporter J. Monette.)(Johnson, D.) (Entered: 12/01/2020) |
| 02/11/2021 | 56 | ORDER. The Defendant has indicated that he would like to schedule a Change of Plea Hearing. The change of plea hearing is hereby REFERRED to a magistrate judge.<br>Signed by Judge Michael P. Shea on 2/11/2021. (Gait, Emily) (Entered: 02/11/2021) |
| 02/11/2021 | 57 | ORDER REFERRING PLEA to Magistrate Judge Thomas O. Farrish as to Daniel Scott<br>Signed by Judge Michael P. Shea on 2/11/21. (Johnson, D.) (Entered: 02/12/2021) |
| 03/04/2021 | | NOTICE regarding hearing via Zoom as to Daniel Scott: The Guilty Plea Hearing scheduled for 3/9/2021 at 11:00 a.m. will be conducted via Zoom. The video link is https://www.zoomgov.com/j/1611778237?pwd=RzllVk1lOXFCd1Z4TUhydVVmZzc5QT09 and call in number is 1 646 828 7666.<br><br>Meeting ID: 161 177 8237<br><br>Meeting Password: 081265<br><br>The public may also join by following the zoom video link. Please note: Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. The Judicial Conference of the United States, which governs the practices of the federal courts, has prohibited it. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court. (Wood, R.) (Entered: 03/04/2021) |
| 03/04/2021 | 58 | NOTICE OF E–FILED CALENDAR as to Daniel Scott: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Change of Plea Hearing set for 3/9/2021 at 11:00 AM in East Courtroom, 450 Main St., Hartford, CT before Judge Thomas O. Farrish. The hearing will be held via zoom video conference. (Wood, R.) (Entered: 03/04/2021) |
| 03/09/2021 | 59 | ORDER OF REFERRAL TO PROBATION FOR PRESENTENCE INVESTIGATION AND REPORT as to Daniel Scott. First Disclosure–PSI due 4/20/2021, Objections Due 5/4/2021, 2nd–Disclosure PSI due 5/14/2021, Sentencing Memorandum due 5/18/2021, Response due |

A-8

|  |  |  |
|---|---|---|
|  |  | 5/25/2021, Sentencing set for 6/1/2021 at 2:00 PM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea.<br>Signed by Judge Michael P. Shea on 3/9/21. (Wood, R.) (Entered: 03/10/2021) |
| 03/09/2021 | 60 | Minute Entry for proceedings held before Judge Thomas O. Farrish:Change of Plea Hearing as to Daniel Scott held on 3/9/2021, Plea entered by Daniel Scott (1) Guilty Count 1, indictment. Total Time: 1 hour and 5 minutes(Court Reporter FTR.)(Wood, R.) (Entered: 03/10/2021) |
| 03/09/2021 | 61 | ORDER as to Daniel Scott pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No.116–182, 134 Stat. 894 (Oct. 21, 2020).<br><br>Counsel for the defendant shall ensure that the defendant receives a copy of this order within ten days.<br><br>Signed by Judge Thomas O. Farrish on 3/9/21. (Wood, R.) (Entered: 03/10/2021) |
| 03/10/2021 | 62 | ORDER. In light of the defendant's change of plea hearing, the telephonic status conference scheduled for March 11, 2021 has been CANCELLED.<br>Signed by Judge Michael P. Shea on 3/10/2021. (Gait, Emily) (Entered: 03/10/2021) |
| 03/11/2021 | 63 | PLEA AGREEMENT as to Daniel Scott (Attachments: # 1 Exhibit Consent Form)(Morabito, Douglas) (Entered: 03/11/2021) |
| 03/12/2021 | 64 | FINDINGS AND RECOMMENDATIONS as to Daniel Scott.<br>Signed by Judge Thomas O. Farrish on 3/12/21. (Wood, R.) (Entered: 03/12/2021) |
| 03/26/2021 | 65 | TRANSCRIPT of Proceedings: as to Daniel Scott Type of Hearing: Change of Plea. Held on 3/9/21 before Judge Thomas O. Farrish. Court Reporter: Suzanne Benoit. **IMPORTANT NOTICE – REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 4/16/2021. Redacted Transcript Deadline set for 4/26/2021. Release of Transcript Restriction set for 6/24/2021. (Benoit, S.) (Entered: 03/26/2021) |
| 04/20/2021 | 66 | PRESENTENCE INVESTIGATION REPORT (Draft Report) *(SEALED – government and defense counsel)* as to Daniel Scott. (available to USA, Daniel Scott) (Attachments: # 1 Indictment, # 2 Plea Agreement, # 3 Financial Statement)(Nagy, M.) (Entered: 04/20/2021) |
| 04/25/2021 | 67 | First MOTION to Continue *Sentencing Date* by Daniel Scott. (Marquette, Richard) (Entered: 04/25/2021) |
| 04/26/2021 | 68 | ORDER. The (ECF No. 67 ) motion to continue sentencing is GRANTED. The sentencing scheduled for June 2, 2021 has been rescheduled for **Thursday, August 19, 2021 at 10:00am.** Presentencing deadlines have been extended.<br>Signed by Judge Michael P. Shea on 4/26/2021. (Gait, Emily) (Entered: 04/26/2021) |
| 04/26/2021 |  | Reset Deadlines/Hearings as to Daniel Scott: Sentencing set for 8/19/2021 10:00 AM in Courtroom Two, 450 Main St., Hartford, CT before Judge Michael P. Shea (Johnson, D.) (Entered: 04/26/2021) |
| 05/17/2021 | 69 | ORDER as to Daniel Scott accepting and adopting Magistrate Judge's findings regarding Defendant's guilty plea.<br>Signed by Judge Michael P. Shea on 5/17/2021. (Gait, Emily) (Entered: 05/17/2021) |
| 06/16/2021 | 70 | MOTION to Withdraw as Attorney by USA as to Daniel Scott. (Morabito, Douglas) (Entered: 06/16/2021) |
| 06/17/2021 | 71 | ORDER. The (ECF No. 70 ) motion for Attorney Douglas Morabito to withdraw is GRANTED. Once new counsel for the Government has filed an appearance, the Clerk shall terminate Attorney Morabito.<br>Signed by Judge Michael P. Shea on 6/17/2021. (Gait, Emily) (Entered: 06/17/2021) |

| | | |
|---|---|---|
| 06/17/2021 | 72 | ATTORNEY APPEARANCE Natasha Freismuth appearing for USA (Freismuth, Natasha) (Entered: 06/17/2021) |
| 06/17/2021 | | Attorney update in case as to Daniel Scott. Attorney Douglas P. Morabito terminated. (Johnson, D.) (Entered: 06/17/2021) |
| 07/19/2021 | 73 | SENTENCING MEMORANDUM by USA as to Daniel Scott (Freismuth, Natasha) (Entered: 07/19/2021) |
| 07/27/2021 | 74 | PRESENTENCE INVESTIGATION REPORT (Final Report) *(SEALED – government and defense counsel)* as to Daniel Scott. (available to USA, Daniel Scott) (Attachments: # 1 Addendum, # 2 Indictment, # 3 Plea Agreement, # 4 Financial Statement)(Nagy, M.) (Entered: 07/27/2021) |
| 07/27/2021 | 75 | Sealed Sentencing Recommendation: as to Daniel Scott (Nagy, M.) (Entered: 07/27/2021) |
| 08/02/2021 | 76 | MOTION to Seal dr. daly report by Daniel Scott. (Marquette, Richard) (Entered: 08/02/2021) |
| 08/03/2021 | 77 | ORDER. The (ECF No. 76 ) motion to file under seal is GRANTED. The defendant may file Dr. Daly's report under seal.<br>Signed by Judge Michael P. Shea on 8/3/2021. (Gait, Emily) (Entered: 08/03/2021) |
| 08/04/2021 | 78 | SENTENCING MEMORANDUM by Daniel Scott (Attachments: # 1 Exhibit)(Marquette, Richard) (Entered: 08/04/2021) |
| 08/04/2021 | 79 | Sealed Document: Dr. Daly Report by Daniel Scott re 78 Sentencing Memorandum – (Attachments: # 1 Exhibit Dr. Daly's Report)(Marquette, Richard) (Entered: 08/04/2021) |
| 08/19/2021 | 80 | Statement of Reasons *(SEALED – government and defense counsel)* as to Daniel Scott. (available to USA, Daniel Scott) (Nagy, M.) (Entered: 08/19/2021) |
| 08/19/2021 | 81 | ORAL MOTION for Acceptance of Responsibility,and ORAL MOTION to Dismiss Remaining Counts by USA as to Daniel Scott. (Johnson, D.) (Entered: 08/19/2021) |
| 08/19/2021 | 82 | Minute Entry for proceedings held before Judge Michael P. Shea: Sentencing as to Daniel Scott held on 8/19/2021. Granting 81 ORAL Motion for Acceptance of Responsibility as to Daniel Scott (1); granting 81 ORAL Motion to Dismiss Remaining Counts as to Daniel Scott (1); Motion Hearing as to Daniel Scott held on 8/19/2021 re 81 MOTION for Acceptance of Responsibility MOTION to Dismiss filed by USA. Total Time: 1 hours(Court Reporter J. Monette.) (Johnson, D.) (Entered: 08/19/2021) |
| 08/23/2021 | 83 | PRESENTENCE INVESTIGATION REPORT (Revised) *(SEALED – government and defense counsel)* as to Daniel Scott. (available to USA, Daniel Scott) (Attachments: # 1 Psychological Report)(Nagy, M.) (Entered: 08/23/2021) |
| 08/23/2021 | 84 | JUDGMENT as to Daniel Scott Count 1, The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 33 months, to run consecutively with his sentence in case 3:14–cr–00136; supervised release for a term of 3 years; special assessment of $100.; Counts 2–8,are dismissed on the motion of the Government.<br>Signed by Judge Michael P. Shea on 8/23/21. (Johnson, D.) (Entered: 08/24/2021) |
| 08/23/2021 | | DISMISSAL OF COUNTS as to Daniel Scott. (Johnson, D.) (Entered: 08/24/2021) |
| 08/24/2021 | | JUDICIAL PROCEEDINGS SURVEY – FOR COUNSEL ONLY: The following link to the confidential survey requires you to log into CM/ECF for SECURITY purposes. Once in CM/ECF you will be prompted for the case number. Although you are receiving this survey through CM/ECF, it is hosted on an independent website called SurveyMonkey. Once in SurveyMonkey, the survey is located in a secure account. The survey is not docketed and it is not sent directly to the judge. To ensure anonymity, completed surveys are held up to 90 days before they are sent to the judge for review. We hope you will take this opportunity to participate, please click on this link:<br><br>https://ecf.ctd.uscourts.gov/cgi–bin/Dispatch.pl?crsurvey<br>(Johnson, D.) (Entered: 08/24/2021) |
| 09/01/2021 | 85 | MOTION for Extension of Time to file notice of appeal until September 16, 2021 by Daniel Scott. (Marquette, Richard) (Entered: 09/01/2021) |

A-10

| 09/02/2021 | 86 | ORDER. The motion for extension of time to file an appeal (ECF No. 85 ) is GRANTED. The deadline for the filing an appeal shall be extended to **September 16, 2021**. Signed by Judge Michael P. Shea on 09/02/2021. (Wong, Qing Wai) (Entered: 09/02/2021) |
| --- | --- | --- |
| 09/10/2021 | 87 | NOTICE OF APPEAL by Daniel Scott re 84 Judgment, Filing fee $ 505. (Marquette, Richard) Modified on 9/14/2021 to remove filing fee (Peterson, M). (Entered: 09/10/2021) |
| 09/14/2021 | 88 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 87 Notice of Appeal – Final Judgment. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Peterson, M) (Entered: 09/14/2021) |
| 09/14/2021 | | Transmission of Notice of Appeal as to Daniel Scott to US Court of Appeals re 87 Notice of Appeal – Final Judgment (Peterson, M) (Entered: 09/14/2021) |
| 12/02/2021 | 89 | TRANSCRIPT of Proceedings: as to Daniel Scott. Type of Hearing: Sentencing. Held on 8/19/2021 before Judge Michael P. Shea. Court Reporter: Julie Monette. **IMPORTANT NOTICE – REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 12/23/2021. Redacted Transcript Deadline set for 1/2/2022. Release of Transcript Restriction set for 3/2/2022. (Monette, Julie) (Entered: 12/02/2021) |

A-11

 **U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

---

*Connecticut Financial Center*          *(203)821-3700*
*157 Church Street, 25ᵗʰ Floor*          *Fax (203) 773-5376*
*New Haven, Connecticut 06510*          *www.justice.gov/usao/ct*

March 9, 2021

**VIA ELECTRONIC DELIVERY**

Richard C. Marquette, Esq.
Goldblatt, Marquette& Rashba, PC
60 Washington Avenue
Hamden, CT 06518

      Re:    <u>United States v. Daniel Scott</u>
           Case No. 3:20-cr-44(MPS)

Dear Attorney Marquette:

      This letter confirms the plea agreement between your client, Daniel Scott (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government") in this criminal matter.

**THE PLEA AND OFFENSE**

      In consideration for the benefits offered under this agreement, Daniel Scott agrees to plead guilty to Count One of the Indictment charging him with making interstate threats, in violation of Title 18 United States Code Section 875(c).

      The defendant understands that, to be guilty of the offense charged in Count One of the Indictment, the following essential elements must be satisfied:

1. The defendant knowingly sent a message in interstate commerce;

2. Containing a true threat to kidnap any person or to injure the person of another; and

3. The defendant intended the communication to be a threat, or knew it would be perceived as a threat.

*Page 2*

## THE PENALTIES

### Imprisonment

Count One carries a maximum penalty of 5 years' imprisonment.

### Supervised Release

The Court may impose a term of supervised release of three years to begin after any term of imprisonment on Count One. 18 U.S.C. § 3583.

The defendant understands that, should he violate any condition of supervised release, he may be required to serve a further term of imprisonment of up to two years per violation pursuant to 18 U.S.C. § 3583 with no credit for time already spent on supervised release.

### Fine

Count One carries a maximum fine of $250,000.

The defendant is also subject to the alternative fine provision of 18 U.S.C. § 3571.  Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000 (Count One).

### Special Assessment

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction.  The defendant agrees to pay the special assessment on or before the date of sentencing unless he establishes an inability to pay on or before the date of sentencing through the financial disclosure to the U.S. Probation Office as part of the presentence investigation and report, in which case the defendant agrees to pay it as soon as practicable.

### Interest, penalties and fines

Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date.  18 U.S.C. § 3612(f).  Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572(h), (*i*) and § 3612(g).  The defendant reserves the right to argue that there should be no fines, penalties or interest in this case.

*Page 3*

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 of the Sentencing Guidelines, and (2) disclosing to the United States Attorney's Office and the United States Probation Office a complete and truthful financial statement detailing the defendant's financial condition. The defendant expressly authorizes the United States Attorney's Office to obtain a credit report concerning the defendant.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (§ 3E1.1 of the Sentencing Guidelines); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (§ 3C1.1 of the Sentencing Guidelines); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government

*Page 4*

does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The Government and the defendant agree that the defendant's base offense level is 12, pursuant to U.S.S.G. § 2A6.1(a)(1).  The parties agree that two additional levels should be added because the offense involved more than two threats pursuant to U.S.S.G. § 2A6.1(b)(2)(A).  The parties agree that two levels should be subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level under Chapter Two of the Sentencing Guidelines of 12.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category V.  The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 12, assuming a Criminal History Category V results in a range of 27 to 33 months of imprisonment and a fine range of $5,500 to $55,000.  *See* U.S.S.G. § 5E1.2(c)(3) and (h)(1).  Both parties reserve their respective rights to argue for sentences above or below the ranges set forth in this agreement, and, in particular, to suggest grounds for downward or upward departure or variances.

The defendant understands that the Court is not bound by this agreement on the Guideline ranges specified above.  The defendant further understands that he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the United States Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations.  Moreover, the parties reserve the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

*Page 5*

## WAIVER OF RIGHTS

The defendant acknowledges and agrees that he is knowingly, intelligently, and voluntarily waiving the following rights:

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense. The defendant understands that by pleading guilty he waives those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

### Waiver of Right to Challenge Conviction

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction. By pleading guilty, the defendant waives his right to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241. In addition to any other claims he might raise, the defendant waives his right to challenge his conviction based on (1) any non-jurisdictional defects in the proceedings before entry of this plea, (2) a claim that the statute(s) to which the defendant is pleading guilty is unconstitutional, and (3) a claim that the admitted conduct does not fall within the scope of the statute. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

*Page 6*

<u>Waiver of Right to Appeal or Collaterally Attack Sentence</u>

The defendant acknowledges that under certain circumstances, he is entitled to challenge his sentence. In consideration for the benefits offered under this agreement, the defendant agrees not to appeal or collaterally attack the sentence in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, if that sentence is not more than 33 months of imprisonment, a three-year term of supervised release or less, a $250,000 fine or less, and a $100 special assessment even if the Court imposes such a sentence based on an analysis different from that specified above. The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

**ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA**

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty.  The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law.  The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney.  The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement.  The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek attorney's fees and other litigation expenses under the Hyde Amendment.

**SCOPE OF THE AGREEMENT**

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.  The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity

*Page 7*

involved.  Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms and ammunition, and in some states, the right to vote. Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future.  The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Federal Bureau of Prisons or the United States Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in the, offense conduct which forms the basis for the charge in the Indictment in this case.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement.  If the agreement is voided in whole or in part, the defendant will not be permitted to withdraw his guilty plea.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

~~JOHN H. DURHAM~~  Leonard Boyle
Acting  UNITED STATES ATTORNEY

*Douglas P. Morabito*

DOUGLAS P. MORABITO

A-18

*Page 8*

ASSISTANT UNITED STATES ATTORNEY

A-19

*Page 9*

      The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____        3/9/21
DANIEL SCOTT                           Date
The Defendant

      I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____        3/9/21
RICHARD C. MARQUETTE, ESQ.        Date
Attorney for the Defendant

A-20

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :

            v.                    :          CASE NO. 3:20CR44  (MPS)

DANIEL SCOTT                      :


CONSENT FORM

The defendant, DANIEL SCOTT, having applied for
permission to enter a plea of guilty, hereby consents to have a
United States Magistrate Judge hear the application and to
administer the allocution pursuant to F.R.Crim.P., Rule 11.


CONSENTED TO:

DEFENDANT: _____     3/9/21
                                         Date

ATTORNEY FOR DEFENDANT: _____   3/9/21
                                            Date

UNITED STATES ATTORNEY
BY A.U.S.A.: _____Douglas P. Morabito_____   3/10/21
                                             Date

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


------------------------------ x
                               :
 UNITED STATES OF AMERICA,     :
                 Plaintiff,  :    Criminal No.
                               : 3:20-CR-00044 (MPS-1)
             vs.               :
                               :   March 9, 2021
 DANIEL SCOTT,                 :
                 Defendant.  :
                               :
------------------------------ x  Federal Building
                                  450 Main Street
                                  Hartford, Connecticut


CHANGE OF PLEA HEARING

(via Zoom Video Conference)



(Transcription from Electronic Recording)


Held Before:

THE HON. THOMAS O. FARRISH
United States Magistrate Judge




Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:

    <u>For the Plaintiff:</u>

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street - 25th Floor
        New Haven, Connecticut 06510
        203-821-3700
        douglas.morabito@usdoj.gov
            BY:  DOUGLAS P. MORABITO, ESQ.
                Assistant U.S. Attorney


    <u>For the Defendant:</u>

        GOLDBLATT, MARQUETTE & RASHBA, P.C.
        60 Washington Street - Suite 202
        Hamden, Connecticut 06518
        203-228-8867
        rcmarquette@aol.com
            BY:  RICHARD C. MARQUETTE, ESQ.

```
1                  (Proceedings commenced at 11:11 a.m.)

2

3                  THE COURT:  Okay, good morning everybody,  We're

4   here in the matter of United States vs. Danial Scott.

5   It's Case Number 20-CR-44 assigned to Judge Shea.

6                  My name is Judge Farrish.  May I have the

7   appearances of counsel please beginning with the

8   Government?

9                  MR. MORABITO:  Good morning, your Honor.  Doug

10  Morabito for the Government.

11                 THE COURT:  Good morning, Mr. Morabito.

12                 And for the Defendant?

13                 MR. MARQUETTE:  Good morning, your Honor.

14  Attorney Richard Marquette for Mr. Scott.  This is my

15  first time before your Honor.  It's a pleasure to see you,

16  sir, and welcome to the bench.

17                 THE COURT:  Well, likewise.  Thank you, Mr.

18  Marquette, and good morning, Mr. Scott.

19                 Okay.  So Mr. Scott, we're here for a change of

20  plea hearing and the operative charging document in your

21  case is the indictment dated March 10th of 2020 and that's

22  on the docket at docket entry number 11.

23                 So Mr. Marquette, I understand that Mr. Scott

24  would like to change his plea to Count 1 of the

25  indictment; is that correct?
```

```
1              MR. MARQUETTE:  That's correct, your Honor.
2    However, I just want to point out that Mr. Morabito was
3    kind enough to send me an updated plea agreement yesterday
4    but it's dated the 9th.  I reviewed it, it's the same
5    document except for the date, that's all.
6              THE COURT:  Okay.  I think it had had one typo
7    in it.  There was a disagreement as to a number on
8    particular term, but in any event you've seen the document
9    that he shared with you yesterday?
10             MR. MARQUETTE:  Yes, your Honor.
11             THE COURT:  And you had a chance to review it
12   with Mr. Scott?
13             THE DEFENDANT:  Yes, sir.
14             THE COURT:  Okay.
15             All right.  So Mr. Scott, your lawyer says that
16   you've decided to enter a plea of guilty and we've
17   convened this hearing because I want to talk to you about
18   that.  So in a few minutes you and I are going to have a
19   conversation that will help me determine whether in making
20   this decision you fully understand all of the relevant
21   considerations and that you've decided to plead guilty
22   because you are in fact guilty.
23             But before you and I can have that conversation
24   there's a few pieces of legal business that we need to
25   take care of first, so I'm going to take care of those
```

1   now.

2          So the first thing we need to address is the

3   fact that we're holding this hearing by videoconference

4   and I want to begin by making sure that everybody is okay

5   with that and that it's going to work.

6          So Mr. Scott, let me ask you, can you hear and

7   see me, the prosecutor, Mr. Morabito and your lawyer, Mr.

8   Marquette?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Okay, Mr. Maquette, can you hear and

11   see me, Mr. Scott and Mr. Morabito?

12         MR. MARQUETTE:  Yes, sir.

13         THE COURT:  Okay.  Mr. Morabito, can you hear

14   and see me, Mr. Marquette and Mr. Scott?

15         MR. MORABITO:  Yes, your Honor.

16         THE DEFENDANT:  Okay.  If at any point anybody

17   can't see or hear somebody that they need to hear or see I

18   want you to do two things.  First, I want you to kind of

19   jump up and wave at the camera and, second, I want you to

20   speak up too.  We've got representatives of the Court's

21   technology group standing by and they can help you get

22   reconnected.

23         All right, so Mr. Scott, as I'm sure you know we

24   are in the middle of this Covid thing and because of Covid

25   there's a new federal law that allows us to conduct change

A-26

6

```
 1    of plea hearings by videoconference, but we can proceed by
 2    videoconference only if you consult with your lawyer about
 3    it and only if you consent to doing so.  So I do want to
 4    tell you that you have the legal right under Rule 43 of
 5    the Federal Rules of Criminal Procedure to be physically
 6    present in a public courtroom with me and the prosecutor
 7    for today's hearing.  And the Constitution may also give
 8    you a right to be physically present.  So we can do this
 9    by videoconference only if you consent to doing so and
10    only if you waive your right to be physically present.
11              Do you understand everything I've said so far?
12              THE DEFENDANT:  Yes, your Honor.
13              THE COURT:  Okay.  And have you consulted with
14    Mr. Marquette about your right to be physically present
15    and about consenting to proceed by videoconference?
16              THE DEFENDANT:  Yes, sir.
17              THE COURT:  And do you consent to proceed by
18    videoconference and waive your right to be physically
19    present?
20              THE DEFENDANT:  Yes, your Honor.
21              THE COURT:  And Mr. Marquette, are you satisfied
22    that Mr. Scott understands his right to physical presence
23    and that he's knowingly and voluntarily consenting to
24    proceed by videoconference and waiving his right to be
25    here?
```

1          MR. MARQUETTE:  He and I have discussed it

2 several times and I do believe he does understand, sir.

3          THE DEFENDANT:  Okay.  Terrific.

4          All right.  So Mr. Marquette, under the CARES

5 Act before the Court can accept a guilty plea through

6 videoconference it must find that the case cannot be

7 further delayed without serious harm to the interests of

8 justice.  What would you like to put on the record about

9 harms that would flow from further delay in this

10 proceeding?

11          MR. MARQUETTE:  Mr. Scott has been incarcerated

12 for a year now.  Given the Covid crisis, given his

13 distance from his family, the economic and emotional

14 hardships that he's had to endure both while incarcerated

15 as well as with the family, asks that he consent to the

16 hearing today and that we of forward today.  Thank you.

17          THE COURT:  Okay.  And Mr. Morabito, is there

18 anything that the Government would like to put on the

19 record on that point?

20          MR. MORABITO:  No, your Honor.  I agree with Mr.

21 Marquette and just would add I know Mr. Scott is looking

22 for some finality in this case and I think to delay it any

23 further it's going to significantly impinge him.

24          THE COURT:  Okay.  And then the lase question on

25 this topic, just a slightly broader question, Mr.

1   Morabito, does the Government have any reason to suppose

2   that the legal requirements for proceeding by

3   videoconference have not been met?

4           MR. MORABITO:  No, your Honor.

5           THE COURT:  Okay.  Very well.  In that case we

6   will proceed by videoconference.

7           All right.  So Mr. Scott, let's move on to one

8   other piece of preliminary business.  So you may remember

9   at an earlier court appearance another judge told you

10  about some of your rights, like your right to silence and

11  your right to counsel.

12          So recently Congress passed a new law that

13  requires judges to tell you about another set of rights

14  and we're required to do this the first time you appear in

15  court.  And since this is the first time that you've

16  appeared since the new law was passed I'm going to tell

17  you about these rights now.  They are rights that you have

18  under a United States Supreme Court case called *Brady v.*

19  *Maryland*.

20          So under the *Brady* case the Government has the

21  duty to disclose information that's favorable to the

22  defendant and material to either guilt or punishment.

23  This includes not only information that tends to show a

24  defendant is not guilty but other information favorable to

25  a defendant such as information that can be used to

1   impeach the credibility of the prosecution witness or any

2   other information that if it were to be withheld would

3   deprive the defendant of a fair trial.  The Government

4   must disclose this information even if no request is made

5   by the Defendant, and if the Government fails to produce

6   material information that's subject to *Brady* and the

7   defendant is later convicted at trial, the Court may

8   vacate the judgment of conviction and order a new trial in

9   which a defendant is able to make use of the information.

10          And if you have additional questions about the

11  *Brady* rule, maybe it came up earlier in your discussions

12  with Mr. Marquette, you can speak with your attorney about

13  it, okay?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Okay.

16          All right.  So the next preliminary matter I'd

17  like to take up before we proceed to your guilty plea is

18  the matter of the referral of the case to me and your

19  consent to that referral.  And what I'm talking about

20  here, Mr. Scott, is this.  So there are two types of

21  judges in the federal system.  There are what's called

22  magistrate judges and there are what's called district

23  judges, and the two different types of judges have

24  different types of authority.

25          So I'm a magistrate judge.  You may have heard a

1    judge named Judge Shea referred to in your case.  Judge

2    Shea is the district judge to whom your case has been

3    assigned.  So without the referral of a district judge and

4    your consent, as a magistrate judge I couldn't handle a

5    proceeding like this, a change of plea in a criminal case

6    in which is felony is charged.  That proceeding would have

7    to be handled by a district judge.

8              So Judge Shea has referred this case to me to

9    handle this proceeding and to make a recommendation to him

10   as to whether he should accept your guilty plea, and that

11   referral is only for the sake of convenience.  It's not

12   for any other reason.  After this your case will go back

13   to Judge Shea for all remaining proceedings.

14             So I can't take your guilty plea unless you

15   consent to my doing so.  You can consent to have this

16   proceeding before me or you may have this proceeding

17   before a district judge.

18             So with that, Mr. Scott, let me ask you have you

19   discussed with your lawyer consenting to having this

20   proceeding before me?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  And do you want to have this

23   proceeding before me or would you prefer to have it before

24   the district judge?

25             THE DEFENDANT:  I'd rather have it before you,

A-31

1   your Honor.

2           THE COURT:  Okay.  And Mr. Morabito, does the

3   Government consent to having this proceeding before me?

4           MR. MORABITO:  Yes, your Honor.

5           THE COURT:  Okay.  And Mr. Marquette, has the

6   consent form found its way to Mr. Scott?  Does it have it

7   with him today?

8           MR. MARQUETTE:  Through a couple of tries, your

9   Honor, it has reached him and it's in front of him. He

10  just needs to sign it in front of your Honor.

11          THE COURT:  Okay.  So Mr. Scott, if you want to

12  have this proceeding before me you can go ahead and sign

13  that consent form.  If you don't want to have that

14  proceeding before me you should not sign the consent form.

15  And I see you signing, but I do want to tell you just for

16  the record that if you want to have any further

17  conversations with your lawyer about it I can set you off

18  in a private conference room.

19          THE DEFENDANT:  All right.

20          THE COURT:  But it sounds you've consented and

21  signed the document?

22          THE DEFENDANT:  Yes, sir.

23          MR. MARQUETTE:  Your Honor, if I may?  If I may,

24  your Honor?

25          THE COURT:  Sure.

A-32

```
 1              MR. MARQUETTE:  Mr. Scott, just hold it up in

 2   front of the camera so we can see your signature.

 3              THE COURT:  You anticipated me.  I was going to

 4   ask him to do that.

 5              MR. MARQUETTE:  I'm a nervous Nellie, your

 6   Honor.  Nervous Nellie.  Thank you (unintelligible), Mr.

 7   Scott.

 8              THE COURT:  So we'll have our record reflect

 9   that Mr. Scott has held the consent form up in front of

10   the camera, that he signed the consent form.

11              I find that Mr. Scott understands that he has a

12   right to have this proceeding before a district judge and

13   that he has knowingly and voluntarily waived that right

14   and consented to proceed before me, a magistrate judge.

15              Okay.  So Mr. Scott, what you're proposing to do

16   today to plead guilty to a felony charge is a serious

17   thing, so one of the things I want to accomplish in this

18   hearing is just making sure that you've got a clear head

19   and that you're ready to proceed today.

20              So let me first ask Mr. Marquette in preparing

21   for this hearing have you had any difficulty in

22   communicating with Mr. Scott?

23              MR. MARQUETTE:  None whatsoever, your Honor.

24              THE COURT:  Okay.  Do you have any doubts about

25   his competence to participate in this proceeding at this
```

```
 1   time?

 2              MR. MARQUETTE:  No, sir.

 3              THE COURT:  No incompetence aside, do you know

 4   of any other reason why we should not go forward today?

 5              MR. MARQUETTE:  None whatsoever, sir.

 6              THE COURT:  Okay.

 7              Mr. Scott, how are you feeling today?  Are you

 8   well?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Okay.  Are you having any difficulty

11   understanding what's going on here today?

12              THE DEFENDANT:  No, your Honor.

13              THE COURT:  Okay.  Give me your state of mind

14   today.  Do you feel that you're capable of making

15   important decisions?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  Okay.  Have you consumed any

18   alcoholic beverages or drugs or medicines even during the

19   past 24 hours?

20              THE DEFENDANT:  No, sir.

21              THE COURT:  Okay.  Let me just ask you a few

22   questions that I want you to answer yes or no, and if I

23   want to know more I'll ask you to go into more detail.

24   But are you now or have you recently been under treatment

25   by a doctor?
```

```
 1          THE DEFENDANT:  Like a psychiatrist -- a
 2  psychologist or something like that?
 3          THE COURT:  Well, I was going to ask you about
 4  psychologists and mental health people in a minute, but
 5  for now let's just talk about physical doctors, medical
 6  doctors.
 7          THE DEFENDANT:  No, sir.
 8          THE COURT:  Recently have you been under the
 9  treated -- and you can just answer this yes or no, but
10  have you been under treatment by any mental health
11  professional?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Okay.  And despite that treatment do
14  you feel like you've got your head about you today, that
15  you can understand what's going on in court?
16          THE DEFENDANT:  Yes, sir.
17          THE COURT:  Okay.
18          So Mr. Marquette, I'll just turn to you to
19  determine whether I need to ask Mr. Scott more on that
20  point, but do you know what his reference is and does it
21  give you any cause for concern about his ability to
22  participate in today's proceeding?
23          MR. MARQUETTE:  Well, the conclusion is no, your
24  Honor, none of it does.  However, I would like to point
25  out that Mr. Scott did catch Covid while at Wyatt, he was
```

1  treated for that, he seems to be clear of that.  I had him

2  meet with a psychologist that I know.  He did that.  I

3  think he's in some sort of group counseling at Wyatt, but

4  all those things put together, your Honor, do not give me

5  give me pause to say that he is able to go forward today

6  knowing what's going on.

7          THE COURT:  Okay.

8          And Mr. Scott, do you agree with all that?  Do

9  you agree that irrespective of whatever is going on with

10  our counselor or what have you, you feel like you've got

11  your head about you, you can make important decisions and

12  all of that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  Okay.  All right.

15          So Mr. Scott, let me ask you, are you satisfied

16  with the legal services that have been provided to you by

17  Mr. Marquette?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Okay.  And are you satisfied that he

20  spent enough time investigating the case?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Has he spent enough time speaking

23  with you about the case?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you feel like you've had enough

1  time with him analyzing your options and explaining them

2  to you?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Okay.  So in a minute we're going to

5  be talking about a plea agreement letter that the

6  Government has proposed here which I'm guessing, as is

7  usually the case, was a product of negotiations between

8  Mr. Marquette and Mr. Morabito.  Are you satisfied that

9  Mr. Marquette has spent enough time in those negotiations

10  with the Government?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  Okay.  Any dissatisfaction with Mr.

13  Marquette for any reason?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  Okay.  All right.  Very well.

16           Okay, so Mr. Scott, before the Court can accept

17  a guilty plea from you the law requires me to speak with

18  you in open court and to inform you of a number of

19  important matters relating to a guilty plea to make sure

20  that you understand those matters.  To put a little more

21  detail on that basically the law requires me to make sure

22  that you understand your rights; that you've decided to

23  plead guilty because it's in your best interest to do so

24  and preferable to going to trial; that you've decided to

25  plead guilty after fully reviewing the case and discussing

A-37

17

1   the case with your counsel; that you know the penalties

2   that can be imposed on you if you plead guilty, including

3   imprisonment and fines and so forth.  And that in pleading

4   guilty you're acting voluntarily and not because of force

5   or threats or promises, of course other than the promises

6   that are contained in the plea agreement, and that you

7   should be permitted to plead guilty because you are in

8   fact guilty.

9           So in order to comply with those requirements I

10  have to ask you questions while you are under oath and you

11  have to answer those questions truthfully.  And if you

12  were to knowingly make a false statement while you're

13  under oath that will be a crime, and in that event the

14  Government would have a right to bring a new criminal

15  charge against you based on that false statement and it

16  will be able to use that false statement against you.

17          Do you understand everything I've said so far?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Okay.  So with all of that put out

20  there would you like to be placed under oath at this

21  time?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Okay.  I'll ask the Clerk to place

24  you under oath then.

25          THE DEFENDANT:  Yes, your Honor.

18

```
1              THE DEPUTY CLERK:  Please raise your right hand.

2

3              DANIEL SCOTT, the Defendant herein, was

4              duly sworn by the Deputy Clerk and testified

5              under oath as follows:

6

7              THE COURT:  Okay.  So we did that, Mr. Scott,

8   because I'm going to be asking you a few questions here,

9   but before we get to those questions let me just tell you

10  that if you don't understand the question that I'm asking

11  just tell me and I'll try and clarify it for you.  But

12  unless you tell me otherwise I'll assume that you

13  understood my question and move on to the next one.  Is

14  that fair?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Okay.  And if at any time you want

17  to speak with your lawyer privately before answering one

18  of my questions you have a right to do so and all you need

19  to do is tell me and I'll give you an opportunity to speak

20  with your lawyer privately in a private videoconference

21  room.  But unless you ask me to do that I'll assume that

22  you don't want to speak with your lawyer privately before

23  answering a question, then I'll move on to the next one.

24  Does that work?

25             THE DEFENDANT:  Yes, your Honor.
```

```
 1              THE DEFENDANT:  Okay.  All right.
 2              So let me start off by asking you a few
 3    questions here.  So first of all, can you tell me your
 4    full name including any middle name?
 5              THE DEFENDANT:  Daniel David Scott.
 6              THE COURT:  Okay.  Have you ever used any
 7    aliases?
 8              THE DEFENDANT:  No, sir.
 9              THE COURT:  And how old are you?
10              THE DEFENDANT:  33.
11              THE COURT:  Where were you born?
12              THE DEFENDANT:  Poughkeepsie, New York.
13              THE COURT:  Okay.  And are you a citizen of the
14    United States?
15              THE DEFENDANT:  Yes, your Honor.
16              THE COURT:  Okay.  So I know you're in detention
17    now but what was your most recent home address?
18              THE DEFENDANT:  70 Elm Street.
19              THE COURT:  And in what town is that in?
20              THE DEFENDANT:  Norwich, Connecticut.
21              THE COURT:  Okay.  All right.  How far did you
22    go in school?
23              THE DEFENDANT:  12th grade.
24              THE COURT:  Okay.  And I think I know the answer
25    to this, Mr. Scott, but I'm required to ask it because in
```

1   a minute we're going to be getting into a letter and I'm

2   going to ask you if you read it.  But can you read and

3   write?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Okay.  All right.  Okay.  So before

6   we get to more questions beyond your name and your address

7   and so forth, let me tell you some more about your rights.

8   Okay.

9            The first think I want you to understand about

10  your rights, Mr. Scott, is that you have a right to

11  continue to plead not guilty even if your guilty, and if

12  you continue to plead not guilty you'll be entitled to a

13  trial by a jury consisting of 12 persons selected from the

14  community and at that trial you'll have the right to be

15  represented by a lawyer and if necessary to have the Court

16  appoint a lawyer to represent you or in other words to

17  continue Mr. Marquette's court-appointed representation of

18  you at every stage of the trial and every stage after

19  that, including an appeal.

20           If you're unable to afford a lawyer as you know

21  the Court will appoint a lawyer for you at no cost to you

22  and in fact we've appointed Mr. Marquette to represent

23  you.  Do you understand all the rights I've explained to

24  you so far?

25           THE DEFENDANT:  Yes, your Honor.

```
 1              THE COURT:  And if you were to continue to plead

 2   not guilty and go to trial you would be presumed innocent

 3   and the Government would have to prove your guilt beyond a

 4   reasonable doubt to the satisfaction of each and every

 5   member of the jury, and you would have the right to be

 6   found not guilty on any charge for which the admissible

 7   evidence does not sustain a finding of guilty beyond a

 8   reasonable doubt.

 9              In the course of the trial any witnesses for the

10   Government would have to come to court and testify in your

11   presence.  You would have the right to see, hear, confront

12   and question any and all witnesses; you have the right to

13   object to the testimony of any witness for the Government

14   in whole or in part and ask that testimony be excluded

15   from the trial if you have a basis for doing so.  And you

16   would have a right to object to and seek to exclude any

17   other evidence offered by the Government.

18              So let me just pause there for a second and ask

19   if you're still understanding me.  You're still

20   understanding me?

21              THE DEFENDANT:  Yes, sir.

22              THE COURT:  Okay.  If you were to continue to

23   plead not guilty and take the case to trial -- oops.  Did

24   we lose -- yep, we lost video on Mr. Morabito for one

25   second but he's back.
```

A-42

```
 1            Okay.  So if you were to continue to plead not
 2   guilty and take the case to trial you would have the right
 3   to take the witness stand and testify if you chose to do
 4   so.  However, you would have the right to remain silent
 5   and not incriminate yourself and you would not be required
 6   to take the witness stand.  If you chose not to testify
 7   the jury would be instructed that accused as a
 8   constitutional right to remain silent, that the jury may
 9   not penalize the defendant in any way for exercising this
10   basic constitutional right and that your exercise of this
11   right could not be considered or discussed by the jurors
12   in their deliberations.
13            I need also to tell you that if the case were to
14   be tried you would have the right to present evidence in
15   your defense, including the testimony of witnesses, and
16   you would have the right to use subpoenas issued by the
17   Court to compel the production of evidence in your favor,
18   including the testimony of witnesses.  That means that you
19   would have the right to require witnesses to come to court
20   and testify even if they don't want to do so voluntarily.
21   But at the same time you would not be required to present
22   any evidence or to call any witnesses, and if you chose
23   not to present any evidence of call any witnesses the
24   jurors will be instructed that they may not consider this
25   in their deliberations.
```

1          So let me just pause here and ask if you're

2    still following me.

3          THE DEFENDANT:  Yes, sir, I am.

4          THE DEFENDANT:  Okay.  All right.  So if you

5    decide to plead guilty today I will first have to ask you

6    some questions about what you did to satisfy myself that

7    you are in fact guilty, and you'll have to answer my

8    questions and acknowledging your guilt and in doing that

9    you would be giving up your right to remain silent and to

10   not incriminate yourself.  Do you follow me?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  Okay.  And if you plead guilty and I

13   accept your plea you would be giving up your

14   constitutional right to a jury trial and the other rights

15   that I've just discussed.  There wouldn't be a trial of

16   any kind.  Instead you would be found guilty on the basis

17   of your guilty plea and that finding would be the

18   equivalent of and have the same legal effect as a finding

19   of guilty by a jury after a full and fair trial.

20         Do you understand this?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Okay.  And if you plead guilty and

23   your plea is accepted you would be giving up any and all

24   defenses you might have to these charges.  For example, if

25   you think that Government agents might have violated your

```
 1   constitutional rights because of the way in which they

 2   obtained evidence against you, you would be waiving any

 3   such objection by pleading guilty.  In other words, you

 4   can't plead guilty, have your plea accepted, and then

 5   later appeal on the ground that the evidence against you

 6   should have been suppressed.  By pleading guilty and

 7   asking the Court to accept your plea you would be waiving

 8   any and all claims based on anything the Government has

 9   done before today in connection with the investigation and

10   prosecution of the case.

11             You follow everything I've said so far?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Okay.  All right.  So Mr. Scott, do

14   you want to give up your right to remain silent and your

15   right not to incriminate yourself?

16             THE DEFENDANT:  Yes, I do.

17             THE COURT:  And do you want to give up your

18   right to a jury trial?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  Okay.  And do you want to give up

21   any and all claims, defenses, objections and appeals that

22   you might have based on anything the Government has done

23   before today?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Okay.  All right.
```

```
 1              So I have received a copy of a proposed plea

 2   agreement in the form of a letter addressed to Defendant's

 3   counsel dated March 9th of 2021 and the letter has 9 pages,

 4   although page 8 is almost entirely blank.  It just has the

 5   words Assistant United States Attorney on it.

 6              So, Mr. Scott, have you seen this letter?

 7              THE DEFENDANT:  Yes, sir.  I have the letter

 8   here in front of me.

 9              THE COURT:  Okay.  And have you read all the

10   pages of the letter?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  Okay.  And have you discussed the

13   contents of the letter fully with your lawyer?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  And do you feel that you fully

16   understand the terms of the agreement that's being set

17   forth in this letter?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Okay.  And does this letter fully

20   and accurately reflect your understanding in the agreement

21   that you're entering into with the Government or do you

22   think that Mr. Morabito got something wrong?

23              THE DEFENDANT:  No.  It's pretty accurate.

24              THE COURT:  Okay.  You say pretty accurate.  Is

25   there anything --
```

1          THE DEFENDANT:  I mean like if I'm -- I'm in

2    agreement with it.

3          THE COURT:  Okay.  All right.

4          So Mr. Marquette, can you confirm that you've

5    discussed the terms of the plea agreement letter with the

6    Defendant?

7          MR. MARQUETTE:  The final statement will be yes,

8    your, I have, but I'd like to reiterate that this letter

9    is the result of probably five, six months of negotiations

10   with Mr. Morabito.  The (unintelligible) in terms of along

11   the way Mr. Scott has been apprised of every single

12   development that has occurred and I believe he understands

13   what it's about and it includes all the terms and

14   conditions that I worked out with Mr. Morabito on behalf

15   of Mr. Scott.  So, yes, it does reflect such, sir.  Thank

16   you.

17         THE COURT:  Okay.  Terrific.  All right.  So

18   with that I'll turn to Mr. Morabito and I'll ask him to

19   summarize the essential terms of the agreement for us.

20   Mr. Morabito?

21         MR. MORABITO:  Yes, your Honor.

22         Your Honor, do you want me to cover the elements

23   and penalties at this time?

24         THE COURT:  Yeah, if you could please.

25         MR. MORABITO:  Okay.  And I would, your Honor, I

1   guess for the record I reiterate that Mr. Marquette calls

2   it an negotiation.  It's essentially him beating me up for

3   the last six months and he did a -- for the record he did

4   a very good job for his client in negotiating his plea,

5   but in any event I'll move on to the plea agreement now.

6           THE COURT:  Okay.

7           MR. MARQUETTE:  And Mr. Morabito is no slouch.

8   He's a wonderful advocate for the Government.  I'm proud

9   that he represents our country.

10          MR. MORABITO:  Okay.  Thank you.

11          All right.  Your Honor, on page 1 of the plea

12  agreement it indicates that Mr. Scott is prepared to plead

13  guilty to Count 1 of the indictment which charges him with

14  making interstate threats in violation of Title 18, United

15  States Code Section 875(c).  The elements of that offense

16  are, one, that Mr. Scott knowingly sent a message in

17  interstate commerce; two, that the message contained a

18  true threat to kidnap any person or to injure the person

19  of another; and three, that Mr. Scott intended the

20  communication to be a threat or knew it would be perceived

21  as a threat.

22          Onto page 2 of the agreement it outlines the

23  penalties.  The offense carries a maximum penalty of 5

24  years imprisonment.  The Court additionally can impose a

25  term of supervised release of 3 years to begin after any

1  time of imprisonment.  Mr. Scott understands that were he

2  to violate any condition of supervised release he could be

3  required to serve a further term of imprisonment of up to

4  two years per violation with no credit for any time he was

5  already on supervised release.

6          The offense carries a maximum fine of $250,000.

7  The alternative fine provision does apply but again the

8  $250,000 would be the maximum fine in this case.  There is

9  a mandatory $100 special assessment that is payable upon

10  conviction for this count.  Additionally there is a

11  section also on page 2, interest penalty fine that must

12  otherwise order should the Court impose a fine or

13  restitution of more than $2,500, as part of his sentence

14  interest would be charged on the unpaid balance of the

15  fine.  If there is no -- it says fine or restitution but

16  there is no restitution that's applicable in this case.

17  I'll put that on the record as well, your Honor.

18          Onto page 3 there is a paragraph that discusses

19  the sentencing guidelines as well as the factors

20  enumerated under 18 United States Code Section 3553(a)

21  regarding an appropriate sentence in this case, which I

22  believe your Honor will cover a bit later in the

23  proceeding.

24          There is also on page 3 a --

25          THE COURT:  So it's my plan to cover the

```
 1   applicability of the sentencing guidelines but perhaps
 2   through the calculation with him.
 3           MR. MORABITO:  Certainly, your Honor.  I'll do
 4   that when we get to that section of the plea agreement.
 5           Also on page 3 there is acceptance of
 6   responsibility where again the Government is agreeing to
 7   recommend the Court reduce by two levels from Mr. Scott's
 8   adjusted offense level based on prompt recognition and the
 9   affirmative acceptance of responsibility for the offense,
10   but because of the calculation he doesn't qualify for the
11   additional one point reduction at sentencing, your Honor,
12   because he was under 15 for a total offense level, for an
13   adjusted offense level.  So I just put that on the record.
14   Under 16, excuse me.
15           And then further down onto page 4 is what the
16   parties believe the guideline stipulation to be.  Again,
17   your Honor, I don't know if you want me to put on the
18   specifics or just the -- sort of the total at the end.  I
19   do it either way, whatever your Honor wants.
20           THE COURT:  Sure.  Well, the more detailed the
21   better --
22           MR. MORABITO:  Okay.
23           THE COURT:  -- if you don't mind.
24           MR. MORABITO:  Certainly.  The Government and
25   Mr. Scott agree that Mr. Scott's base offense level is 12
```

A-50

30

1  and that's pursuant to Section 2A6.1(a)(1).  The parties

2  further agree that two additional levels would be added

3  because the offense here involved more than two threats

4  and that's pursuant to Section 2A6.1(b)(2)(a).  And the

5  parties agree that two levels should be subtracted under

6  Section 3B1.1 for acceptance of responsibility as noted

7  above, resulting in a total offense level of 12.

8          The parties believe that Mr. Scott is a criminal

9  history category 5 which results in a sentencing range of

10  27 to 33 months of imprisonment and a fine range of $5,500

11  to $55,000.  Notably, your Honor, both parties reserve

12  their rights to argue for sentences above or below the

13  ranges set forth in this agreement, in particular to

14  suggest grounds for either downward or upward departure or

15  variances.

16          I guess it's important we also in this section

17  Mr. Scott understands that the Court is not bound by the

18  agreement on the guideline ranges above, therefore Mr.

19  Scott understands he wouldn't be able to withdraw his

20  guilty plea if the Court imposes a sentence outside any of

21  the ranges set forth in this agreement.

22          There's also a section at the bottom of page 4,

23  Information to the Court, which simply the Government is

24  reserving its right to address the Court with respect to

25  an appropriate sentence to be imposed and would discuss

```
 1   the facts of the case including the background information

 2   of Mr. Scott with the U.S. Probation Office, with the

 3   exception of grand jury material.  We wouldn't share that.

 4            On page 5 there's a waiver of rights your Honor

 5   covered a little bit ago with Mr. Scott, the waiver of

 6   trial rights and consequences of a guilty plea if he

 7   decides to continue down this path today and plead guilty

 8   and if it was accepted by the Court.

 9             Also there is a waiver of statute of

10   limitations provision where Mr. Scott is agreeing that

11   should the conviction, again assuming it's accepted by the

12   Court, following his plea be vacated for any reason, any

13   prosecution not time barred by the applicable statute of

14   limitations as of today could be reinstated even if it was

15   beyond the statute of limitations for this offense.

16            There is on the bottom of page 5 a waiver of the

17   right to challenge a conviction which your Honor covered,

18   but again Mr. Scott is acknowledging that under certain

19   circumstances he could challenge his conviction.  However,

20   by pleading guilty today he would waive his right to

21   appeal or collaterally attack his conviction in any

22   proceeding including under a motion under (audio skip) USC

23   Section 2255 and/or 2241.  It also outlines various claims

24   what he would be waiving based on his conviction.

25            I guess the only thing that would be saved, and
```

```
 1   that's in the agreement, your Honor, is it wouldn't

 2   preclude Mr. Scott from raising a claim of ineffective

 3   assistance of counsel in the appropriate forum.

 4           On page 6 is the section, Waiver of Right to

 5   Appeal or Collaterally Attack Sentence.  Again, Mr. Scott

 6   acknowledges under certain circumstances he could

 7   challenge his sentence.  In consideration for the benefits

 8   offered in this agreement he's agreeing not appeal or

 9   collaterally attack his sentence in any proceeding,

10   including but not limited to again under Section 2255 or

11   2241 so long as that sentence doesn't exceed 33 months of

12   imprisonment, a 3-year term of supervised release, a

13   $250,000 fine and a $100 special assessment even if the

14   Court imposed a sentence based on analysis to confirm what

15   the parties had specified.

16           Again, the waive doesn't preclude a claim by Mr.

17   Scott of ineffective assistance of counsel in the

18   appropriate forum.

19           Also on page 6 there is a paragraph

20   acknowledging the guilt and voluntariness of plea where in

21   sum Mr. Scott acknowledges he is entering into this

22   agreement and pleading guilty freely and voluntarily

23   because he is in fact guilty of the offense charged in

24   Count 1.

25           Notably also within this section is a statement
```

1    that Mr. Scott acknowledges he's not a prevailing party

2    with respect to the court, any count of conviction

3    dismissed -- I'm not sure it's explicitly stated in the

4    agreement, your Honor, but for the record at the time of

5    sentencing the Government intends to move to dismiss all

6    the remaining counts against Mr. Scott.

7              THE COURT:  Yes.

8              MR. MORABITO:  At the bottom of page 6 and onto

9    page 7 there is a scope of the agreement provision where

10   again Mr. Scott acknowledges that this agreement is

11   limited to the undersigned party, that it can't bind any

12   other federal authority or any state or local authority.

13             On page 7 there is a paragraph called

14   Consequences which again Mr. Scott acknowledges that if

15   his guilty plea is accepted it could be deprived of

16   certain rights, such as right to hold public office, to

17   serve on a jury, to possess firearms and ammunition, and

18   in some states the right to vote.  Further, he understands

19   that if he wasn't a U.S. citizen a plea of guilty could

20   result in removal from the United States, denial of

21   citizenship and denial of admission to the U.S. in the

22   future.

23             He further understands that pursuant to the

24   Justice for All Act, the Bureau of Prisons or the U.S.

25   Probation Office will collect a DNA sample from Mr. Scott

1    for analysis and indexing.

2            And then finally Mr. Scott understands that the

3    Government reserves its right to notify any state or

4    federal agency by which he is licensed or with which he

5    does business as well as a current or future employer of

6    his conviction.

7            And then finally below that will be Satisfaction

8    Against Criminal Liability where the Defendant's guilty

9    plea, if accepted, satisfies his criminal liability here

10   in the District of Connecticut as a result of his

11   participation in the offense conduct forming the basis of

12   the charge or the charges in the indictment in this case.

13           And then below that there's a no other promises

14   provision where Mr. Scott is acknowledging there are no

15   other promises, agreements or conditions entered into

16   other than those in this plea agreement and there wouldn't

17   be any unless set forth in writing signed by parties.

18           Your Honor, and now there's a signature block

19   for myself and then there's a signature block for Mr.

20   Scott and Mr. Marquette.  And I did just notice that it

21   still has Mr. Durham's name on there and Leonard Boyle is

22   now the Acting United States Attorney, so I don't know if

23   we can fix that after the fact by crossing it out or if

24   you want Mr. Scott to do that.  Whatever your Honor thinks

25   makes the most sense.

```
 1              THE COURT:  Okay.  Very well.  Well, let's --
 2    when we get to the point of him signing it remind me of
 3    that, but before I lose the thread, let me just ask Mr.
 4    Scott.
 5              So Mr. Scott, you've heard Mr. Morabito describe
 6    the essential terms of the agreement.  I just want to ask
 7    you is there anything in what he said that differs from
 8    the way you understood it?
 9              THE DEFENDANT:  No, sir, I don't.
10              THE COURT:  Okay.  Do you believe that entering
11    into this agreement is in your best interest?
12              THE DEFENDANT:  Yes, your Honor.
13              THE COURT:  Okay.  And other than the promises
14    that were made in the agreement which Mr. Morabito has
15    described, has anybody made any other promises that have
16    caused you to want to plead guilty?
17              THE DEFENDANT:  No, your Honor.
18              THE COURT:  Has anybody made any promises to you
19    as to what your sentence will be?
20              THE DEFENDANT:  No, your Honor.
21              THE COURT:  Has anybody threatened you in any
22    way in an attempt to get you to plead guilty?
23              THE DEFENDANT:  No, sir.
24              THE COURT:   Anybody putting any pressure on you
25    to plead guilty?
```

A-56

36

```
 1              THE DEFENDANT:  No, your Honor.

 2              THE COURT:  Are you doing this voluntarily of

 3    your own free will?

 4              THE DEFENDANT:  Yes, your Honor.

 5              THE COURT:  Like because you believe it's in

 6    your best interest to do so?

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  All right.  Very well.

 9              So Mr. Marquette, do you think we've reached a

10    point here where we should have him sign the agreement and

11    I think you've got a counterpart there, you'll sign it as

12    well?

13              MR. MARQUETTE:  Well, your Honor, I would like

14    the Court to hear Mr. Scott about the following.  I have

15    expressed my thoughts about his case repeatedly throughout

16    the representation.  My thoughts, opinions are not binding

17    on the Court, what he ultimately gets will be simply up to

18    Judge Shea.  I will certainly make my points known but

19    it's all up to his Honor, and I want Mr. Scott just to

20    make sure that he understands that.

21              THE COURT:  Well, that's a good point.  Why

22    don't we take that up, Mr. Scott, just to make sure you

23    understand.  So basically what your lawyer is saying is

24    that you guys might have had some conversations over what

25    a sentence might be and Mr. Marquette might have explained
```

A-57

```
 1   to you how he plans to present your cause when the time

 2   comes for sentencing, but there are no guarantees here.

 3   Judge Shea is going to decide what your sentence should

 4   be.

 5              Do you understand all of that?

 6              THE DEFENDANT:  Yes, sir.

 7              THE COURT:  Okay.  All right, very well.  Well,

 8   with that, Mr. Marquette, I propose to have him sign the

 9   letter now.

10              And Mr. Scott, if you were in the courtroom here

11   we would have had Mr. Morabito take care of this for us,

12   but because you're not we're going to ask you to do one

13   thing to help everybody out and just make a clean

14   document.  So what Mr. Morabito was saying a minute ago is

15   that Mr. John Durham is no longer the United States

16   Attorney.  The acting United States Attorney today is

17   Leonard Boyle.  So what we'd like you to do is cross out

18   the words John H. Durham on page 7 and then we'd like you

19   to write Leonard Boyle next to it.

20              THE DEFENDANT:  L-e-n?

21              THE COURT:  L-e-p --

22              THE DEFENDANT:  Oh, L-e-o --

23              THE COURT:  -- n-a-r-d.

24              THE DEFENDANT:  Yep.

25              THE COURT:  And then the last name is B as in
```

```
1    boy, o-y-l-e.  B-o-y-l-e.  Okay?  And then before the

2    words United States Attorney we're going to put the word

3    "Acting."  And hopefully Mr. Morabito and Mr. Marquette

4    were following along and all of our documents look the

5    same other than the handwriting.

6            Okay.  All right.  So with that done, Mr. Scott,

7    on page 9 there's a place for your signature.  It asks you

8    to certify that you read the please agreement letter and

9    its attachments.  There isn't an attachment.  And that

10   you've had ample time to discuss this agreement with

11   counsel and that you fully understand and accept its

12   terms.  If that's true, why don't you go ahead and sign it

13   and date it.  And there's a place there for Mr. Marquette

14   and Mr. Morabito to do so as well, and I'll trust

15   everybody to get their versions of the document to the

16   Clerk.  Okay.

17           And we'll have the record reflect that Mr. Scott

18   is holding the document up to the camera and that he has

19   (unintelligible).

20           MR. MARQUETTE:  Your Honor?

21           THE COURT:  Yes.

22           MR. MARQUETTE:  If it's okay with the Court I'm

23   going to ask Wyatt to scan the copies that was just signed

24   to me.  I will sign them where I need to sign and I'll

25   send them to the Government and Mr. Morabito will sign it
```

1   and efile it himself.  This way there's not multiple

2   copies floating around.

3           THE COURT:  Okay.  Well, that would be great.

4   Okay.  All right.  Terrific.

5           All right.  So Mr. Scott, so before I take your

6   plea I must tell you what the possible penalties could be

7   if you plead guilty.  And you've heard Mr. Morabito report

8   on some of those too, but I want to underscore it by

9   having you hear it directly from the judge.

10          Before I get into the penalties though I do want

11  to tell you that just because I'm telling you about

12  maximum possible penalties does not mean that Judge Shea

13  is going to impose them as the sentence in this case.  The

14  law requires me to inform you of these penalties so you

15  know what the possible consequences of your plea could be.

16  In other words, the law requires me to make sure that you

17  understand what the worst case scenario could be if you

18  plead guilty.  The actual sentence you receive could be

19  less than the maximum possible sentence.

20          So with that introduction let me tell you that

21  if you plead guilty you could be sentenced to a maximum

22  term of imprisonment of as much as 5 years.  You could be

23  sentenced to a mandatory minimum term of supervised

24  release of at least 3 years, and if you're placed on

25  supervised release you'll be required to satisfy certain

1  conditions while you were on supervised release, including

2  that you not commit any other crime.  And if you were to

3  violate any condition of your supervised release you could

4  be required to serve a further term of imprisonment of two

5  years with no credit for time already spent on supervised

6  release.

7          Now, your sentence could also include a maximum

8  fine of as much as $250,000 and you heard Mr. Morabito

9  make reference to the Court's obligation to impose what we

10  call a special assessment that will be in the amount of

11  $100.

12          And in addition you could be required to pay the

13  costs to the United States Government of any imprisonment,

14  probation or period of supervised release that's part of

15  your sentence.  If a sentence of imprisonment is imposed

16  the rate of cost is $102.60 a day, and if a sentence of

17  probation or supervised release is imposed the rate is $12

18  a day.

19          So in a minute I'm going to ask you if you

20  understand all that but before I do I'll just ask first

21  Attorney Morabito and then Attorney Marquette if I caught

22  in my list all of the possible penalties that could be

23  imposed.

24          MR. MORABITO:  Yes, your Honor.

25          THE COURT:  Mr. Marquette, any (audio skip).

```
1                MR. MARQUETTER:  (Unintelligible.)

2                THE COURT:  Okay.

3                And so, Mr. Scott, do you understand the

4   possible consequences of your plea of guilty?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  Okay.  And then next, let me talk to

7   you about the sentencing guidelines.  You heard me and Mr.

8   Morabito talk about that a little bit.  So under the law

9   that applies to sentencing in federal court, Judge Shea is

10  required to impose a sentence that's sufficient but not

11  harsher than necessary to impose a just punishment to

12  reflect the seriousness of the offence, to promote respect

13  for law, to deter you and others from committing crimes,

14  to protect the public from further crimes and to provide

15  the Defendant with needed treatments.

16               In deciding what sentence is sufficient, the

17  Court must make findings of fact concerning the offense

18  and your history and characteristics that are based on

19  information that will be provided by you and your counsel,

20  by the Government and by the Probation Office.  And in

21  addition the Court must calculate the applicable

22  sentencing guideline range and consider that range in

23  deciding what the sentence should be.

24               Have you and your attorney talked about how the

25  sentencing guidelines might apply to your case?
```

1                THE DEFENDANT:  Yes, sir.

2                THE COURT:  Okay.  So we won't be able to

3      determine the applicable sentencing guideline range for

4      your case until we get a presentence report from the U.S.

5      Probation Office and you, your lawyer and the United

6      States Attorney's Office have an opportunity to comment

7      on the presentence report, and until then nobody can be

8      sure what the guideline range will be.  Do you understand

9      that?

10               THE DEFENDANT:  Yes, I do.

11               THE COURT:  Okay.  In other words, your lawyer

12     may have given you his opinion about what the guideline

13     range might be, but his opinion or prediction could be

14     wrong.  Do you understand that?

15               THE DEFENDANT:  Yes, sir.

16               THE COURT:  And if it turns out that the

17     guideline range is higher than what you anticipated, the

18     mere fact that you expected to be sentenced pursuant to a

19     lower guideline range won't be a basis for withdrawing

20     your plea of guilty or for overturning the sentence.  Do

21     you understand that?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  Okay.  Another thing I need to tell

24     you, and you heard Attorney Morabito allude to it, the

25     Court is not bound by any sentencing calculation made by

1    the Government or by your counsel or by the Probation

2    Office and it's not required to grant any sentencing

3    request or recommendation made by the Government, and you

4    won't have a right to withdraw your guilty plea if it does

5    not grant the Government's request or follow its

6    recommendation.  Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Okay.  So under the law the Court

9    can depart from the applicable sentencing guideline range

10   and impose a harsher sentence or a more lenient sentence.

11   There might be facts about your case that will call for a

12   harsher or more lenient sentence than a sentence within

13   the applicable guideline range and we won't be able to

14   determine whether it will be appropriate to depart from

15   the guideline range until the presentence report has been

16   prepared and reviewed.  Do you understand that?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Okay.  And just taking that one step

19   further your lawyer may have advised you that you might be

20   able to get a downward departure or that there will be no

21   upward departure, but if he gave you that sort of opinion

22   it could be wrong.  Do you understand that?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  And if you plan to move for a

25   downward departure on some basis and your motion is

1  denied, the mere fact that you expected to get a downward

2  departure will not be a basis for withdrawing a guilty

3  plea and overturning a sentence.  Do you follow me on that

4  point?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Okay.  And in the same vein if you

7  don't expect to get an upward departure but the Court

8  decided to depart upward, the decision to depart upward

9  will not be a basis for withdrawing your guilty plea and

10  overturning the sentence.  Do you understand that?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Okay.  All right.  So we're getting

13  pretty close here, Mr. Scott, to the conversation that I

14  wanted to have with you, but before I get there I just

15  want to touch on two other things.

16          So first there's a section of your plea

17  agreement entitled Waiver of Right to Appeal or

18  Collaterally Attack Sentence, and you'll find it on page

19  6.  The rules require me to personally address you in open

20  court regarding provisions like these to inform you of

21  their terms and to make sure that you understand those

22  terms.  So I'm going to do that now.

23          So under certain circumstances the law provides

24  that a defendant may have a right to appeal his case or to

25  collaterally attack his conviction and sentence.  An

```
1    appeal is when a defendant takes his case to a higher
2    court and asks that appellate court to review the case for
3    mistakes.  A collateral attack is when the defendant files
4    a separate case making a legal attack on his conviction or
5    his sentence, in other words an argument that there was
6    something legally wrong with the conviction or the
7    sentence and asking the Court to set it aside.  That
8    separate action is often called a habeas.
9             You following me so far?
10            THE DEFENDANT:  Yes, your Honor.
11            THE COURT:  Okay.  So in your plea agreement
12   here with the Government you are waiving, in other words
13   you're giving up any rights you may have to appeal or
14   collaterally attack your conviction and sentence under
15   certain circumstances.  As part of your plea deal with the
16   Government you're giving up the right to appeal or
17   collaterally attack your conviction and sentence if the
18   sentence is not more than 33 months of imprisonment, a 3-
19   year term of supervised release or less, a $250,000 fine
20   or less, and a $100 special assessment.  And the waiver
21   applies regardless of whether the sentence runs
22   concurrently or consecutively with the undischarged
23   portion of any other sentence that may be imposed on you
24   in some other case.
25            So do you feel you understand all of this?
```

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, your Honor. |
| 2 | THE COURT:  Okay.  I know I asked you if you |
| 3 | read the whole letter and you said that you had, but this |
| 4 | is important so let me just ask you.  Did you in |
| 5 | particular read that paragraph, Waiver of Right to Appeal |
| 6 | and Collaterally Attack Sentence? |
| 7 | THE DEFENDANT:  Yes, your Honor, I did. |
| 8 | THE COURT:  Okay.  And have you discussed that |
| 9 | section with your lawyer and has your lawyer explained it |
| 10 | to your satisfaction? |
| 11 | THE DEFENDANT:  Yes, sir. |
| 12 | THE COURT:  Okay.  And then finally before we |
| 13 | get to that conversation I know you testified under oath |
| 14 | that you're a United States citizen but the rules do |
| 15 | require me to go over the potential immigration |
| 16 | consequences of a plea of guilty. |
| 17 | So persons who are guilty of felony offenses and |
| 18 | were not citizens of this country may be removed from the |
| 19 | United States, denied citizenship and denied admission |
| 20 | into the United States in the future.  Naturalized |
| 21 | citizens who are guilty of felony offenses may be |
| 22 | denaturalized and removed. |
| 23 | So this Court is not an Immigration Court and if |
| 24 | these issues were to come up neither Judge Shea or I would |
| 25 | make these decisions.  They will be made in a separate |

1    proceeding.  In the meantime I just want you to know these

2    potential immigration consequences of a plea of guilty and

3    that nobody can promise you what those consequences would

4    ultimately prove to be.

5              Do you understand all of this?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Okay.  So with all of that out of

8    the way, Mr. Scott, now I want to get to that

9    conversation.

10             So at the very beginning I said that I wanted to

11   have a conversation with you just to ask you some

12   questions that are designed to assure me that you want to

13   plead guilty because you are in fact guilty.  And before

14   we get to those questions I do want to remind you that

15   we're in open court, the prosecutor is here and will be

16   listening to your answers to my questions and the record

17   is taking down your answers as well.  And you're also

18   oath.  So before we go any further I just want to ask you

19   is there anything you want to privately consult with Mr.

20   Marquette about or are you ready to have that conversation

21   with me?

22             THE DEFENDANT:  I'm ready to proceed.

23             THE COURT:  Okay.  Very well.  All right.

24             So I do want to ask you some questions just to

25   satisfy me that you're proposing to plead guilty because

```
 1   you are in fact guilty.

 2            So Mr. Scott, do you have the indictment in the

 3   room with you?

 4            THE DEFENDANT:  No, I don't.

 5            THE COURT:  No?  Okay.  All right.  Well, you

 6   read the indictment, right?

 7            THE DEFENDANT:  Yes, I read it.

 8            THE COURT:  Okay.  And you know that in Count 1

 9   of the indictment there is a quote of a series of text

10   messages; do you remember that?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  And you may remember, because

13   there's a lot of text messages that are quoted in the

14   indictment.  Let me just remind you the ones that are

15   quoted in Count 1 begin with "I see K, Monday gonna be the

16   worst day of your life."  Do you remember that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Okay.  And the indictment says that

19   these text messages were sent to a person with initials

20   KP.  Do you remember that?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Okay.  So I don't need to put KP's

23   name, full name on the record here today, but I just want

24   to ask you, Mr. Scott, did you send the text messages in

25   Count 1 in the indictment to the person referenced in the
```

```
 1   indictment as KP?

 2           THE DEFENDANT:  Yes, sir.

 3           THE COURT:  Okay.  Where were you when you sent

 4   those text messages?

 5           THE DEFENDANT:  Connecticut.

 6           THE COURT:  Okay.  Where in Connecticut?

 7           THE DEFENDANT:  Norwich.

 8           THE COURT:  Okay.  And where did you think KP

 9   was when sent the text messages to her?

10           THE DEFENDANT:  In New York City.

11           THE COURT:  Okay.

12           THE DEFENDANT:  Apartment.

13           THE COURT:  I don't imagine you stopped and

14   thought about it at the time, but at the time you sent the

15   text messages did you know that they will be crossing a

16   state line?

17           THE DEFENDANT:  Yeah, I wasn't thinking about

18   it, yeah.

19           THE COURT:  Yeah, I know you weren't thinking

20   about it but if you had stopped to think about it would

21   you have known that they were crossing the state line from

22   Connecticut to New York?

23           THE DEFENDANT:  No, sir.

24           THE COURT:  Okay.  So the Government says that

25   you wrote these messages on March 1st of 2020 and I
```

```
 1   actually remember that that was Sunday because I was sworn
 2   in as a judge the next day and that was a Monday.  So
 3   you're writing these text messages on a Sunday, right?
 4            THE DEFENDANT:  Yes, sir.
 5            THE COURT:  She's saying -- you're telling KP
 6   that you're gonna come visit her at the gym where she
 7   worked on Monday?
 8            THE DEFENDANT:  Yes, sir.
 9            THE COURT:  Okay.  So there's a line in the text
10   message, "Because I'm gonna shoot the whole gym up and all
11   of us."  Do you remember reading that in the indictment?
12            THE DEFENDANT:  Yes, sir.
13            THE COURT:  Okay.  Did you write that text
14   message?
15            THE DEFENDANT:  Yes, sir.
16            THE COURT:  And did you write it to KP?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  And you were in Connecticut when you
19   wrote that?
20            THE DEFENDANT:  Yes, sir.
21            THE COURT:  Okay.  And when you wrote it you
22   knew that it was across the Connecticut/New York state
23   line before it reached KP?
24            THE DEFENDANT:  Yes, sir.
25            THE COURT:  Okay.  And when you wrote it you
```

1   were saying that when you got to the gym if any of her

2   coworkers got in your way you would shoot them and her?

3            THE DEFENDANT:  Yes, sir,

4            THE COURT:  Okay.  And at the time you wrote it

5   did you think she would take it that way as a threat to

6   shoot her and her fellow workers?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Okay, all right.

9            Well, I think that's all I need to ask, Mr.

10  Scott, on those points.  Unless there's anything else that

11  the Government would like to put in the record.

12           MR. MORABITO:  No.  Thank you, your Honor.

13           THE COURT:  Okay.  All right.

14           So this is normally the point at which I ask if

15  there is a petition to plead guilty that has been

16  prepared.  This is the first guilty plea proceeding I've

17  done for Judge Shea and I understand that he doesn't use

18  petitions so you don't have one of them but let me just

19  skip to the question I normally ask after he signs the

20  petition which is this, Mr. Scott.

21           So basically based on everything I've seen and

22  heard here it sounds that you want to plead guilty because

23  you believe you are guilty and choose to plead guilty

24  freely and voluntarily.  Is that right?

25           THE DEFENDANT:  Yes, sir.

A-72

```
1              THE COURT:  Okay.  All right.

2              So Mr. Marquette, do you think Mr. Scott is

3    ready to plead guilty here to Count 1 in the indictment or

4    is there any other business we should do first?

5              MR. MARQUETTE:  I think he's ready, your Honor.

6              THE COURT:  Okay.  Very well.

7              All right.  So Mr. Scott, I know you have the

8    indictment with you but have you read the charge against

9    you in Count 1 of the indictment?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Okay.  So we can now have the charge

12   read to you in its entirety before you plead unless you

13   waive a reading of the charge.  Do you waive a reading of

14   the charge?

15             THE DEFENDANT:  No, your Honor, you can read it.

16             THE COURT:  Oh, you'd like to have the charge

17   read to you?

18             THE DEFENDANT:  Well, I don't know, with the

19   waiver?  I don't know, whatever.

20             THE COURT:  Okay.

21             Mr. Marquette, have you discussed waiving the

22   reading of the indictment?

23             MR. MARQUETTE:  Yes, your Honor, we have and I

24   think that he would like it waived and we talked about

25   that because it's formality that (unintelligible) but he
```

```
 1   could waive.  So we could waive (unintelligible).

 2              THE COURT:  And I'm sorry, Mr. Scott.  I may

 3   have asked the question kind of in a mixed up way.  Let me

 4   just ask you.  Do you waive the reading of the indictment

 5   --

 6              THE DEFENDANT:  Yeah.

 7              THE COURT:  -- do you want to proceed to your

 8   plea?

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  Okay.  All right.  So I'm now going

11   to ask the Clerk to put you to your plea and this is

12   normally the point at which I would ask you to stand, but

13   if you stand you're going to go off camera.  So I'm just

14   going to have you sit right there and I will ask the Clerk

15   to put you to your plea.

16              DEPUTY CLERK:  Yes, your Honor.

17              In the case of United States of America vs.

18   Daniel Scott, Criminal Number 3:20-CR-44 MPS, as to Count

19   1 of the indictment charging violation of Title 18 United

20   States Code Section 875(c), how do you wish to plead?

21              THE DEFENDANT:  Guilty.

22              DEPUTY CLERK:  Your Honor, Defendant pleads

23   guilty to Count 1 of the indictment.

24              THE COURT:  Okay.  Very well.  So on the basis

25   of the Defendant's answers to my questions in open court
```

1    today and on the other remarks of defense counsel and the

2    prosecutor that have been placed on the record, I find

3    that Mr. Scott is fully competent and capable of entering

4    an informed plea, that he understands the nature of the

5    charge against him, that he knows and understands that he

6    has a right to a jury trial and that he knows and

7    understands that he has the other constitutional rights I

8    discussed with him today, that he knows and understand the

9    possible consequences of a guilty plea, that he has chosen

10   to plead guilty because he is in fact guilty of the

11   offense charged, and that his plea of guilty is knowing

12   and voluntary and that it's supported by a factual basis

13   as to each of the essential elements of the offense.

14        So I'm going to prepare a set of written

15   findings and recommendations for Judge Shea on

16   recommending that Mr. Scott's plea of guilty be accepted

17   and also recommending that Judge Shea make the finding

18   that's required to accept the plea of guilty given by

19   videoconference under the CARES Act.

20        All right.  So Mr. Scott, before I let you go

21   today let's touch a few other things.  So first, in your

22   future the United States Probation Office is going to

23   interview you and after that a presentence report is going

24   to be prepared.  The report will be submitted to the Court

25   to assist in determining the appropriate sentence.    I

```
 1   want you to bear in mind that the Probation Officers work

 2   for the Court, not for the United States Attorney's Office

 3   and that your cooperation with the United States Probation

 4   Officer will generally be beneficial to you.

 5          However, it's important that you carefully

 6   discuss with your attorney what you say to the Probation

 7   Office because the presentence report can be very

 8   important in the determination of your sentence.

 9          Okay.  I have two more things on my list of

10   things to cover.  Mr. Marquette, is there any application

11   for release pending sentencing on Section 3143?

12          MR. MARQUETTE:  Your Honor, now that Mr. Scott

13   has pled guilty the threshold of what I would have to

14   achieve to have him released is at a higher standard and

15   given the fact that I do not think I could achieve that

16   standard I will not be making a motion today.  I know this

17   is not what Mr. Scott wants to hear but that's simply the

18   way the statute reads and I have explained this to him

19   previously.  So no, sir.  Thank you.

20          THE COURT:  Okay.  Well, it is indeed a clear

21   and convincing evidence standard.  Okay.  All right.

22          So the last thing I have on my list of things to

23   accomplish it to tell you some of the dates of the order

24   that's going to enter with respect to the presentence

25   report.  So we're going to enter an order that the
```

A-76

1   presentence report be disclosed to counsel by April 20th of

2   2021, that objections be made by May 4th of 2021, and that

3   the Probation Office submit the final presentence report

4   by May 14th of 2021.

5           So with that that crosses off everything that I

6   wanted to accomplish.

7           Mr. Morabito, is there anything else that the

8   Government would have us take up today?

9           MR. MORABITO:  No, your Honor.  Thank you.

10          THE COURT:  Okay.  Mr. Marquette, anything else

11  from the defense?

12          MR. MORABITO:  No, sir.  On behalf of Mr. Scott

13  we do appreciate your time, sir.  Thank you.

14          THE COURT:  Okay.  In that case we will stand in

15  recess.  Mr. Scott, best of luck to you.

16          THE DEFENDANT:  Thank you, your Honor.

17          (Proceedings adjourned at 12:16 p.m.)

18

19

20

21

22

23

24

25

```
 1                       CERTIFICATE

 2

 3           I hereby certify that the foregoing 56

 4  pages are a complete and accurate transcription to the

 5  best of my ability of the electronic recording of the

 6  Change of Plea Hearing in re:  UNITED STATES OF AMERICA

 7  vs. DANIEL SCOTT, Criminal No. 3:12-CR-00044 (MPS-1) held

 8  before The Hon. Thomas O. Farrish, United States

 9  Magistrate Judge, vis Zoom teleconference, in Hartford,

10  Connecticut, on March 9, 2021.

11

                 Suzanne Benoit
12  _____

13  Suzanne Benoit, Transcriber        Date:  03/26/2021

14

15

16

17

18

19

20

21

22

23
```

```
 1                 UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF CONNECTICUT
 2
      - - - - - - - - - - - - - - - - x
 3                                  No. 3:20-CR-44 (MPS)
                                    No. 3:14-CR-136 (MPS)
      UNITED STATES OF AMERICA
 4
      vs.                             AUGUST 19, 2021
 5                                    10:02 A.M.
      DANIEL SCOTT
 6                                    SENTENCING
      - - - - - - - - - - - - - - - - x
 7

 8                       450 Main Street
                        Hartford, Connecticut
 9

10         BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.

11

12    APPEARANCES:

13    FOR THE PLAINTIFF:

14            UNITED STATES ATTORNEY'S OFFICE
                 157 Church Street, 25th Floor
15               New Haven, Connecticut 06510
              BY:  NATASHA FREISMUTH, AUSA
16
      FOR THE DEFENDANT:
17
              GOLDBLATT, MARQUETTE & RASHBA, P.C.
18               60 Washington Avenue, Suite 302
                 Hamden, Connecticut 06518
19            BY:  RICHARD C. MARQUETTE, ESQUIRE

20

21

22

23    COURT REPORTER:  Julie L. Monette, RMR, CRR, CRC
                           (860) 212-6937
24
      Proceedings recorded by mechanical stenography, transcript
25    produced by computer.
```

A-79

2

```
1                        10:02 A.M.

2          THE COURT:  We are here in United States versus Daniel

3   Scott.  That's two different cases.  The first is Docket

4   20-CR-44, which is the -- I guess I'll call the main case for

5   today, and the other is the violation of supervised release in

6   14-CR-136, the earlier case.

7          So in terms of -- first, let me ask counsel to state

8   appearances.

9          MS. FREISMUTH:  Good morning, Your Honor.  Assistant

10  United States Attorney Natasha Freismuth for the Government.

11         THE COURT:  Good morning.

12         MR. MARQUETTE:  Good morning, sir.  Attorney Richard

13  Marquette here with Mr. Scott.

14         THE COURT:  Good morning.

15         Good morning, Mr. Scott.

16         THE DEFENDANT:  Good morning, sir.

17         THE COURT:  All right.  And I should also point out

18  for the record that United States Probation Officers Daniel

19  Leone and Caitlin Brennan are with us this morning in the

20  courtroom.  Officer Leone prepared the Presentence Report in

21  the 20-CR-44 case, and Officer Brennan supervised Mr. Scott

22  while he was on supervised release.

23         So just in terms of the record, Mr. Scott appeared

24  before United States Magistrate Judge Thomas Farrish on March

25  9, 2021.  At that time he entered a plea of guilty to Count One
```

1    of an eight-count Indictment, which charges making interstate

2    threats in violation of Title 18 United States Code Section

3    875(c).  I accepted Mr. Scott's guilty plea on May 17th, 2021.

4           Before I go further, I should point out that in the

5    other case, which is 14-CR-136, I don't believe we've yet had

6    any adjudication of whether Mr. Scott has violated the

7    conditions of his release.  And so in order to have sort of a

8    logical sequence today, I would propose that we start with

9    whether or not Mr. Scott admits the charged violation, and then

10   we would move into sentencing as to both matters.

11          Is that acceptable to counsel?

12          MS. FREISMUTH:  Yes, Your Honor.

13          MR. MARQUETTE:  Yes, sir.

14          THE COURT:  Okay.  So let me turn, then, to the

15   violation report, which Officer Brennan prepared.  This is in

16   Docket 14-CR-136.

17          And, Mr. Marquette, sir, have you had a chance to

18   review that document and discuss it with your client?

19          MR. MARQUETTE:  Yes, Your Honor.

20          THE COURT:  All right.  And can you confirm that

21   you've had enough time to discuss it with him adequately and

22   that we're ready to proceed on that today?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  Very well.  And so I will ask Mr.

25   Scott to stand at this point so that we can place him under

```
1    oath.  If you could raise your right hand, sir.

2        (Defendant sworn.)

3            THE COURT:  All right, sir.  You can have a seat.

4    First of all, I want to welcome those who just arrived.  I

5    don't know if they're from Mr. Scott's family, but welcome.

6            And so, Mr. Scott, first I need to inquire, is your

7    mind clear today?

8            THE DEFENDANT:  Yes, sir.

9            THE COURT:  Okay.  Would you mind, Mr. Marquette,

10   pulling that microphone a little closer to Mr. Scott?

11           And do you understand what's going on?

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  All right.

14           Mr. Marquette said that you had reviewed with him a

15   copy of the report on violation -- actually the amended report

16   on violation of supervised release.  Is that true?

17           THE DEFENDANT:  Yes, sir.

18           THE COURT:  Okay.  Now, let me be clear.  I know --

19   before I go further, I do know that there are basically two

20   sets of violations alleged in the report and that one set of

21   violation relates to some state charges that have not yet been

22   adjudicated.  I'm not going to ask Mr. Scott about those

23   charges.  I know he's still defending those charges in state

24   court.  The one that I'm going to ask about is the interstate

25   threat, which is, of course, why we're here in the main case as
```

```
 1   well.  All right?

 2          Is that clear, Mr. Scott?

 3          THE DEFENDANT:  Yes, sir.

 4          THE COURT:  Now, so the violation report -- I'll

 5   just -- I realize you've read it.  I'll just summarize it for

 6   us though.  It talks about the fact that you were on supervised

 7   release in the other case as a result of a drug conviction in

 8   the two thousand  -- that 2014 case.  The violation, as I say,

 9   lists a whole series of matters -- the violation report lists a

10   whole series of matters that are pending in state court again.

11   Again, I'm not going to ask about those.

12          But it also contains two charges related to the

13   interstate theft (sic) case.  The first is that you violated

14   Standard Condition No. 3, which said that the Defendant shall

15   not leave the Judicial District or other specified geographical

16   area without the permission of the Court or probation officer.

17   And this refers to the fact that, as I understand it, at least

18   according to the report on March 2, 2020, you traveled from

19   Connecticut to The Bronx, New York.

20          The second charge is, frankly, the more serious one,

21   and that is that you violated Mandatory Condition No. 1, which

22   states that the Defendant shall not commit another federal,

23   state, or local offense.  And then this -- this -- the facts

24   set forth in that document pretty much set forth the narrative

25   that's in the Presentence Report in the main case about the
```

6

1    interstate theft conduct -- excuse me -- interstate "threat"
2    conduct, not "theft."
3          Okay.  Then as the report notes, it will take you
4    through sort of the maximum and the like.  So because the
5    underlying case, the drug case, was what's called a Class C
6    felony, the maximum term of imprisonment that I can impose upon
7    a finding of violation is two years.
8          And the statute also says that if I revoke supervision
9    and require you to serve a term of imprisonment, I can also
10   include a requirement that you be placed on supervised release
11   when you get out.  The length of that term is -- the maximum
12   for that term of supervised release is life because the
13   underlying statute provided a term of life supervised release
14   as well.  And so the maximum I can impose is life for
15   supervised release.
16         The guidelines also apply to revocation proceedings.
17   They have policy statements that apply.  The information set
18   forth in the original Presentence Report, or I should say the
19   Presentence Report for the underlying offense, the (b)(1)(C)
20   offense, the drug offense, says that you were in Criminal
21   History Category V at that time.  It also says that the -- this
22   offense, the interstate threat offense, is what's called a
23   Grade B violation.
24         I actually took a look at this.  I actually don't
25   think it's a Grade B violation.  I think it's a Grade A

A-84

7

1    violation.  Let me explain why.

2            And then let me tell you -- before that makes you

3    nervous or anything, let me tell you I don't think it's going

4    to matter today.  I don't think it's going to make a difference

5    in the sentence I impose, but I will explain my reasoning on

6    that.

7            So under the guidelines, a Grade B violation is

8    conduct constituting any other federal, state, or local offense

9    punishable by a term of imprisonment exceeding one year.  So

10   the interstate threat conviction certainly satisfies the Grade

11   B requirement.  It's punishable by more than one year, and it's

12   another federal offense.  So it's clearly Grade B.

13           The question is whether it's also Grade A.  Grade A

14   says:  Conduct constituting a federal, state, or local offense

15   punishable by a term of imprisonment exceeding one year that

16   is:  (1) a crime of violence.  And then it goes on to refer to

17   other things that it could be that don't apply here.

18           So the definition of a crime of violence is a -- I

19   just want to read it so that I'm accurate.  Right, so a crime

20   of violence is an offense that has as an element the use,

21   attempted use, or threatening use of physical force against the

22   person or property of another.  And the way it's used in the

23   guidelines -- it's defined in other ways too, but they don't

24   apply here.  That would be the critical language.

25           So the underlying offense here is interstate threat.

1    The way it's defined in the statute and the way it's charged in

2    the Indictment is a threat to injure.

3            I do find that that is a crime of violence because I

4    do find that it involves a threatening use of physical force

5    against the person or property of another.  Several district

6    courts have so found.  There's also a recent Tenth Circuit case

7    that reaches the same conclusion.  I can get the name of it for

8    you if you're interested, just put it on the record.  The

9    Second Circuit I don't believe has addressed the issue yet, at

10   least that I could find.

11           The Tenth Circuit case is called *United States vs.* --

12   I don't know how to pronounce the last name, but it's

13   M-J-O-N-E-S-S, *Mjoness* perhaps, and the citation is 4 Fed. 4th

14   967.

15           So I do think that -- and for the reasons set forth in

16   that opinion, I do think that -- and based really on the

17   language of the statute -- I do think that the threat to injure

18   offense, 875(c), that is the basis for the violation does

19   constitute a Grade A violation.  But for all that legalese,

20   again, I don't think it's going to matter whether it's a Grade

21   A or Grade B violation today.

22           So getting to what the guidelines actually recommend,

23   so given that I think it's a Grade A violation, the guidelines

24   range for Criminal History Category V is actually above the

25   statutory maximum.  It says 30 to 37 months.  And the way the

1    guidelines work is when that happens, the guidelines range

2    becomes the statutory maximum, so it's 24 months.

3            Now, if I'm incorrect about it being a Grade A

4    violation, in fact it's a Grade B violation, the guidelines

5    range would be similar, not the same.  It would be 18 to 24

6    months.  So I find that it's actually 24 months, but if I'm

7    wrong, it would be 18 to 24 months, which is one of the reasons

8    I said it may not matter.  Okay?  So that's the guidelines

9    range.  And I wanted to advise Mr. Scott of all of that before

10   I questioned him further.

11           Do you understand what I've said about all that, Mr.

12   Scott?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Okay.  So -- and I take it you've had the

15   chance -- I've summarized it now.  Does anything I said about

16   the underlying violations or facts come as a surprise to you?

17   In other words, have you already gone over that information

18   with your lawyer?

19           MR. MARQUETTE:  One second, Your Honor, please?

20           THE COURT:  Sure, yeah.

21      (Pause.)

22           MR. MARQUETTE:  Thank you, Your Honor.

23           THE COURT:  All right.  So, Mr. Scott, do you

24   understand what I've said so far in this proceeding?

25           THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  All right.  And have you gone over the
2    violation report with your lawyer?
3              THE DEFENDANT:  Yes, sir.
4              THE COURT:  All right.  And do you understand the --
5    both the maximum penalty that I described and the guidelines
6    range?
7              THE DEFENDANT:  Yes, sir.
8              THE COURT:  Okay.  You're satisfied to have Mr.
9    Marquette represent you in this proceeding?
10             THE DEFENDANT:  Yes, Your Honor.
11             THE COURT:  Okay.  All right.  And now, of course,
12   under the law, you would have a right to contest the violation.
13   You could ask for a hearing and say, "Judge, I want them to
14   prove this."  The reality is you've pled guilty in the
15   underlying case, so that would be a little bit awkward.  But
16   you could do that if you wanted to.
17             Do you understand that?
18             THE DEFENDANT:  Yes, Your Honor.
19             THE COURT:  All right.  And do you have -- you also
20   have a right to present evidence in mitigation, which means
21   that Mr. Marquette can speak on your behalf today.  You can
22   also speak on your behalf and explain why -- why I should be
23   lenient.
24             Do you understand that?
25             THE DEFENDANT:  Yes, Your Honor.
```

A-88

11

```
 1              THE COURT:  Okay.  And also, of course, you have a
 2   right to speak today if you wish to speak.  You don't have to
 3   speak.  And, of course, anything you say could be used against
 4   you.
 5              Do you understand that?
 6              THE DEFENDANT:  Yes, Your Honor.
 7              THE COURT:  All right.  You're ready to proceed as to
 8   whether you admit or deny?
 9              THE DEFENDANT:  Yes, sir.
10              THE COURT:  All right.  So I'll ask you to stand then.
11   So as to the -- bear with me one sec -- okay.  So, again, I'm
12   not asking about the stuff that's pending in state court.
13   Okay?  I'm only asking about the alleged violation of Charge
14   No. 1, which is that -- sorry -- the alleged violation of
15   Standard Condition No. 3, which is that you were not to leave
16   the Judicial District without the permission of the Court or
17   probation officer; and, second, the violation of the
18   requirement that you not commit another federal, state, or
19   local offense.  And that is only related to the March -- the
20   March and late February 2020 conduct involved in the interstate
21   threat.  That's all I'm going to ask you about.
22              All right.  So as to the alleged violation of Standard
23   Condition No. 3, the condition being that you not leave the
24   Judicial District without the permission of the Court or
25   probation officer, do you admit or deny the violation of that
```

A-89

12

1    condition?

2              THE DEFENDANT:  I admit the violation.

3              THE COURT:  All right.  And as to the violation of

4    Mandatory Condition No. 1, that the Defendant shall not commit

5    another federal, state, or local offense, only referring to the

6    interstate threat that's the subject of our other proceeding

7    today, do you admit or deny violating that condition?

8              THE DEFENDANT:  I admit.

9              THE COURT:  All right.  Based on the Defendant's

10   statements, based on the statements of his counsel, I find by a

11   preponderance of the evidence that Mr. Scott violated the two

12   conditions of his supervised release that I just identified,

13   again only with respect to the interstate threat conduct and

14   not with respect to any of the underlying conduct relating to

15   the state charges that are also referred to in the violation

16   report.

17             You can have a seat, sir.

18             All right.  So now we'll move to sentencing.  First

19   we'll do the sentencing in the main case, which is 20-CR-44.

20   And then after that, in light of Mr. Scott's admissions, I will

21   move to sentencing in the violation case, 14-CR-136.

22             So turning to the 20-CR-44 docket, Mr. -- Officer

23   Leone of the U.S. Probation Office prepared a PSR.  That was

24   filed on April 20th, 2021, in draft.  The final report was

25   filed on July 27th of this year.

A-90

13

1          Of course, I've reviewed the report.  I've consulted

2    with Officer Leone.  I've also reviewed his Sentencing

3    Recommendation dated July 27, 2021.  I've also reviewed the

4    Defendant's submissions, including his Sentencing Memorandum,

5    letters from his sisters, the high school transcript, the

6    various Wyatt certificates.  I've also reviewed the

7    psychological report submitted by the Defendant.  Finally, I've

8    reviewed the Government's Sentencing Memorandum dated July 19,

9    2021.  Give me one second.

10        (Pause.)

11          THE COURT:  Right.  Let me address Attorney Freismuth

12   first.  Has the Government provided notice to the victim with

13   respect to this matter; and if so, is there any indication that

14   the victim wishes to speak?

15          MS. FREISMUTH:  It's my understanding, yes, Your

16   Honor.  And we have not seen any indication.

17          THE COURT:  In other words, you provided notice, but

18   the victim does not wish to speak.

19          MS. FREISMUTH:  Correct.

20          THE COURT:  Okay.  Thank you.  Now we'll turn to the

21   Presentence Report.

22          Attorney Marquette, have you had a chance to review

23   the Presentence Report and discuss it with Mr. Scott?

24          MR. MARQUETTE:  Yes, Your Honor, on several occasions.

25          THE COURT:  Mr. Scott, the Presentence Report is the

A-91

14

```
1    document prepared by Officer Leone.  I know he interviewed you,

2    among others.  Have you had a chance to read that document?

3             THE DEFENDANT:  Yes, Your Honor.

4             THE COURT:  Okay.  And did you have a chance to

5    discuss it with Attorney Marquette?

6             THE DEFENDANT:  Yes, Your Honor.

7             THE COURT:  All right.  And did you provide

8    anything -- any corrections you thought needed to be made to

9    Attorney Marquette, did you discuss them with him?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  Attorney Marquette, at this time do you

12   have any objections to any of the factual statements in the

13   Presentence Report?

14            MR. MARQUETTE:  Just a couple small things, Your

15   Honor.  In the Presentence Report in paragraph 4, it notes that

16   Mr. Scott does not have any program certificates.  Unless

17   there's a jargonese miscommunication, I've provided several

18   certificates of programs and certifications.  For what they're

19   worth, Your Honor, I just want to point out there's a tad

20   difference in perhaps my nomenclature of what I have included.

21            THE COURT:  No, I think you're correct.

22            Mr. Leone, is it all right if we delete that last

23   sentence in light of the certificates?

24            MR. LEONE:  I agree, Your Honor.  I can make that

25   correction.
```

```
 1              THE COURT:  All right.  So we'll delete that last
 2     sentence of paragraph 4.
 3              MR. MARQUETTE:  Thank you, sir.
 4              THE COURT:  What else?
 5              MR. MARQUETTE:  Also in paragraph 4, in my presentence
 6     memo to the Court, I say that Mr. Scott has been disciplinary
 7     free, but he does have -- he did receive a couple tickets.  But
 8     I don't think there was any discipline associated with that, so
 9     I just want to bring that to the Court and defer --
10              THE COURT:  Well, I don't -- I mean -- you know, I
11     don't know what the sanctions were, but a ticket is discipline.
12     I mean you don't get tickets because, you know, you're doing
13     the right -- you're doing what the folks at Wyatt think is the
14     right thing.  You get a ticket --
15              MR. MARQUETTE:  However they define the rules is the
16     rules of the house.  But they could not have been that severe
17     because my client is working in the kitchen throughout for a
18     long time.
19              THE COURT:  Fair enough.
20              MR. MARQUETTE:  But he was in the shower at, I think,
21     a different hour than allowed.  The other one was communicating
22     some sort of disease.  He had COVID.  So I don't -- I don't
23     understand.  But they weren't monumental infractions.
24              THE COURT:  I get it.  Anything else?
25              MR. MARQUETTE:  No, sir.
```

1          THE COURT:  Okay.  Does the Government have any

2    objections to the factual statements in the pre?

3          MS. FREISMUTH:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  There being no objections to

5    the factual statements in the pre, except as I've indicated

6    with regard to paragraph 4, I adopt the factual statements in

7    the Presentence Report as my findings of fact.  I accept the

8    Plea Agreement that was filed on March 11th, yes, satisfied

9    that the agreement adequately -- hold on one second.

10         Yeah, it's dated March.  I can't actually tell when it

11   was filed.  I accept the signed Plea Agreement dated March 9,

12   2021.  I'm satisfied that the agreement adequately reflects the

13   seriousness of the actual offense behavior and that accepting

14   the Plea Agreement will not undermine the purposes of

15   sentencing.

16         All right.  Mr. Scott, I know you appeared before

17   Judge Farrish and he walked you through the maximum penalties,

18   but I do need to identify them for you again.  You face a

19   maximum term of imprisonment of five years.  You face a term of

20   supervised release of no more than three years.  If the Court

21   were to impose probation, it would be for a minimum of one and

22   a maximum of five years.  You face a maximum fine of $250,000.

23   I'm required to impose a special assessment of $100.

24         I take it the Government has not received any request

25   for restitution?

1           MS. FREISMUTH:  No, Your Honor.

2           THE COURT:  All right.  So that's not applicable.

3           Is there any objection to my statement of the maximum

4    penalties?

5           MR. MARQUETTE:  No, Your Honor.

6           THE COURT:  Attorney Freismuth?

7           MS. FREISMUTH:  No, Your Honor.

8           THE COURT:  Okay.  Turning next to the sentencing

9    guidelines, Mr. Scott, one of the things that I'm required to

10   consider in deciding on the sentence is your sentence -- is the

11   sentencing guidelines.  The guidelines are issued by the United

12   States Sentencing Commission, and they provide statements with

13   regard to particular offenses that help guide the Court in

14   thinking about sentencing.

15          The guideline that applies to this case asks or

16   directs the Court to consider the characteristics of the

17   offense, for example, the number of threats, that kind of

18   thing.  The guidelines also direct the Court to consider the

19   nature and extent of the Defendant's criminal record.

20          The end result of the process of applying the

21   guidelines in a particular case is to direct the Court to a

22   range of months of imprisonment that the commission, Sentencing

23   Commission, has decided would be appropriate in a case like

24   yours.  I am not required to sentence you within that range,

25   but I do have to calculate the range accurately and consider it

A-95

18

```
 1    along with other -- along with other factors, which I'll

 2    explain later when I sentence you.

 3              All right.  I've read the parties' briefs.  I've also

 4    read the Presentence Report.  There is a difference between

 5    what the parties calculated and what Officer Leone calculated.

 6    Mr. Marquette's brief comments upon that.  He disagrees with

 7    it.

 8              If you'd like to speak further on that, Mr. Marquette,

 9    you're welcome to.  If not, I'm prepared to move forward.

10              MR. MARQUETTE:  Yes, Your Honor.  I would like

11    deference given to the original Plea Agreement, which requires

12    a lower guideline range than the other.  I respect Mr. Leone

13    for pointing out that the enhancement is necessary in his

14    opinion because of the threats were made.  I don't see it.

15              And I agreed with Mr. Morabito over extended

16    discussions in the fall and into 2021 about what the Plea

17    Agreement would look like.  My client relied on that discussion

18    and on those figures in opting to plead guilty.  And for the

19    record, Your Honor, I did note in a footnote --

20              THE COURT:  I saw it.

21              MR. MARQUETTE:  -- that I went down to that gym,

22    talked to the manager who was on duty that day and asked him

23    how my client was acting.  He said, "as calm as a cucumber,"

24    verbatim.  Those were his words.  He had a paper in his hands

25    and simply wanted to talk to K.P.
```

```
 1              So I don't think he had the intent to go down there

 2    and do harm.  I fault him for going down there.  If he had

 3    called me and said, "I have this issue," I would say, "Don't go

 4    down to The Bronx."  But he did.  That I can't escape from.

 5    But I can argue about he didn't have the intent when there to

 6    do any harm.

 7              THE COURT:  All right.  Thank you, Mr. Marquette.

 8              So I will say that I actually disagree and agree with

 9    the probation officer as to the appropriateness of the

10    enhancement.  However, I am going to adopt the Fernandez

11    departure.  But let me walk through it.

12              So I find that the base offense level is 12 under

13    Section 2A6.1 of the guidelines.  I agree with the parties that

14    an additional two levels are added because the offense involved

15    more than two threats.

16              And so the question that Mr. Marquette was discussing

17    was whether the offense involved any conduct evidencing any

18    intent to carry out such threat.  Given that there were

19    texts -- in fact, more than one text -- which said he was going

20    to come on Monday and hurt you to K.P.; that Monday was going

21    to be the worst day of her life; that he was going to come to

22    her place of employment; and that, in fact, he did show up on

23    the Monday; he left Connecticut without permission from the

24    probation officer, which, of course, he wasn't allowed to do,

25    to go to her place of employment and showed up there on the
```

1    Monday.

2         Whether he was calm or not really, I don't think, to

3    me doesn't move me.  The guideline says if the offense involved

4    any conduct -- I'm emphasizing the word "any" -- any conduct

5    evidencing an intent to carry out such threat, increase by six

6    levels.  I find going down to her place of employment, leaving

7    Connecticut to do so, and showing up there just as he said he

8    would does evidence an intent to carry out such threat.

9    Whether, in fact, he had intent to carry out such threat is

10   something that it's hard -- very hard to know.  I'm not making

11   a finding that he did, but the conduct certainly evidences an

12   intent to carry out such threat.

13        And so I actually don't think it's a close call.  I

14   think a six-level enhancement plainly applies here, so that

15   makes the total offense level 20.

16        However, Mr. Scott has clearly demonstrated that he's

17   accepted responsibility for his offense and has assisted

18   authorities in the investigation or prosecution of his own

19   misconduct by timely notifying them of his intention to plead

20   guilty.  As a result, the total adjustment of minus three

21   points applies as long as the Government makes the requisite

22   motion.

23        MS. FREISMUTH:  Yes, Your Honor.

24        THE COURT:  All right.  Therefore, the resulting

25   offense level is 17.  Mr. Scott is in Criminal History Category

1    V, his criminal history score which is based on his record.  An

2    offense level of 17 in Criminal History Category V gets us to a

3    guidelines range of 46 to 57 months of imprisonment, a term of

4    supervised release of one to three years.  Under the guidelines

5    Mr. Scott's not eligible for probation.  The fine range is

6    10,000 to $95,000.  The special assessment is $100.

7            I should point out that although I'm consulting an

8    older version of the manual, in fact when I prepared this

9    today, I was consulting the correct current version of the

10   manual, which is the one dated November 1, 2018.  So -- and I'm

11   quite sure what I've said reflects what's in that manual.

12           So other than Mr. Marquette's point about whether or

13   not the conduct evidenced an intent to carry out such threat,

14   which is preserved, are there any other objections to my

15   calculation of the sentencing guidelines range in this case?

16           MS. FREISMUTH:  No, Your Honor.

17           MR. MARQUETTE:  No, sir.

18           THE COURT:  Okay.  Very well.  I did say, however --

19   and when we get to the departure part, I am going to adopt the

20   *Fernandez* departure.

21           What's a *Fernandez* departure?  As Mr. Marquette

22   alluded to, the parties negotiated a Plea Agreement in this

23   case, and the Plea Agreement called for a much lower guidelines

24   range of 27 to 33 months.  And that will be the guidelines

25   range I use for this proceeding.  Well, that will be the

A-99

22

1    guidelines range I use after the departure, the *Fernandez*

2    departure for this proceeding, and that will be my starting

3    point.  It doesn't mean that's where I'm going to end up, but

4    that will be my starting point from the standpoint of the

5    guidelines.

6             As I'm going to explain, the guidelines are not the

7    end-all, be-all of sentencing.  The Court considers a series --

8    a series of factors, which I'll explain later.

9             But right now I'd like to hear from Mr. Marquette.

10   Then I'll ask Mr. Scott if he'd like to speak.  Then I'll turn

11   to Attorney Freismuth.  If Mr. Scott wishes -- if Mr. Marquette

12   wishes to present any speakers, he can do that.  And then I'll

13   take a short recess to reflect on what's been said and collect

14   my thoughts.  And then I'll return to impose sentence in both

15   matters.

16            So I think counsel should address the appropriate

17   sentence in both matters, that is to say, in the main case and

18   in the violation case in their remarks.  As counsel knows, the

19   factors the courts consider in sentencing differ slightly in,

20   of course, the main case, which is sort of a regular offense

21   type sentencing, and the supervision case.  In the supervision

22   case under 3583, the Court does not consider the need to --

23   does not consider punishment, the need to reflect the

24   seriousness of the offense or to promote respect for the law.

25   In the main case, of course, the Court does consider that.  The

A-100

23

```
1    factors are otherwise the same.  But -- so I'll ask counsel to
2    address both matters in their remarks.
3           And when counsel are done and after I've heard from
4    everyone else, as I said, I'll take a short recess; and then
5    I'll return to impose sentence in both matters.
6           Go ahead, Mr. Marquette.
7           MR. MARQUETTE:  Your Honor, may I approach the podium?
8           THE COURT:  If you'd like to.
9           MR. MARQUETTE:  Thank you, sir.
10          I begin with the words from Dr. Daly's introduction:
11   As a young child, Daniel experienced repeated abandonment by
12   both parents, chronic neglect, and horrifying physical and
13   psychological abuse at the hand of his father.
14          Your Honor, Mr. Scott was raised in New London in a
15   very abusive household.  He had an absolutely horrible
16   childhood growing up.  Dr. Daly wrote a very thorough report,
17   in my opinion, outlining the so-called interracial --
18   intergenerational trauma that he experienced not just with
19   Daniel but with his father also.
20          As a result, Daniel has been blueprinted to react in
21   situations that are completely inappropriate, in this case
22   illegal.  But he does so because that's the way his mind works.
23   He suffers from a great deal of post-traumatic stress syndrome
24   that Dr. Daly believes needs to be addressed forthwith and
25   severely.  It also -- he also will not do well in prison Dr.
```

**A-101**

24

1   Daly also says in his report.  But for somehow Daniel managed

2   to grow up in New London, finish high school, have a child.

3          And his arrests that are pertaining in state court are

4   pertaining to -- guess what -- a woman, the mother of his

5   child.  He has several arrests in which he was involved.  And

6   he exhibited the same sort of impetuous response that he did in

7   the case involving K.P.

8          THE COURT:  There's another woman too.

9          MR. MARQUETTE:  Believe it or not, that other woman

10  was, I believe, his former lover who left him for --

11         THE COURT:  I think it was his former lover's partner.

12         MR. MARQUETTE:  Yeah, exactly, exactly.  Those cases,

13  by the way, are pending in New London.  I spoke with his state

14  lawyer yesterday.  They're on the docket for September 29th,

15  and the judge there is simply waiting to see what this Court

16  decides in the fed case to decide what to do.

17         I did speak with Daniel's employer, who spoke very

18  highly about him.  He came to work.  He was the model worker.

19         THE COURT:  This is at the Doncaster?

20         MR. MARQUETTE:  Doncaster's.  And they would welcome

21  him back to apply for a job.  They're not saying they will give

22  him a job but welcome him back to apply for a job.  And I

23  thought that was very -- very insightful as to if he wants to

24  do something, he can do it.

25         He's got no other disciplinary at Wyatt that I knew

1    about, seemed to get along well up there.  He works in the

2    kitchen.  I have all the certificates, not easy to get.

3              The high school transcript shows he did graduate on

4    time.  He was not the best of students, but he graduated on

5    time.  He was a good athlete.

6              And also part of the role in his life is his son, who

7    is, you know, a toddler, I think six or seven.  And he adores

8    the kid.  He adores the kid.  But he's got a big challenge

9    there.  He doesn't want to pass along that intergenerational

10   trauma that Judge Daly -- I'm sorry -- sorry.

11             THE COURT:  It's all right.

12             MR. MARQUETTE:  -- Dr. Daly referenced.  He knows

13   that.  He wants to be the best father he can be.  I think he

14   talks to his son just about every day from Wyatt down here.

15             Judge, in my memorandum I asked for time served, and

16   I'm going to ask that any penalty for the violation be

17   concurrent.  I know that's lame, but that's what I will ask

18   for.  I ask for no fees.  He does all the hundred dollar

19   special assessments which will carry with him.  And he has a

20   cell phone that he would ask to be returned.

21             But he is a good guy.  I'm the only one in this room

22   that has spent time with him talking.  He has ambitions and

23   hopes, just like everybody else.  And he's been derailed in

24   life, and he's at a crucial juncture now where what happens

25   here will be perhaps the biggest decision made that will affect

1    him.

2          He wants to stay in the New London area.  He wants to

3    be a father.  He wants to work.  He has hopes and dreams, like

4    I said.

5          He -- but I think he does have, you know, just review

6    of his records show that impetuous behavior; and that's, of

7    course, not good.  I hope that he gets the proper treatment

8    that will allow him to deal with that.  He does need treatment

9    right away.

10         He does have some vocational training, as I mentioned,

11   in electrical field.  He did start school at Ridley Lowell,

12   which is in the New London area.  He wants to continue with

13   that.  He wants to better himself.  He has his work ahead of

14   him.

15         The good news is he has several family members that

16   stand by his side.  Here are two of them in the background, and

17   they will speak.  I submitted letters that they wrote.  I

18   included excerpts in my memo.

19         So all this, Your Honor, we ask that he be sentenced

20   for time served concurrent with the violation of supervised

21   release, vocational training and psychological services

22   provided by the Probation Office.  I did speak to Mr. Leone on

23   a couple occasions recently, and we talked about names and

24   places that might be possible, but Mr. Leone did not think they

25   were ideal at the moment.

A-104

27

```
 1              THE COURT:  You mean places for mental health
 2    treatment?
 3              MR. MARQUETTE:  Yes, yes, yes.
 4              THE COURT:  I think -- I assume you're referring to
 5    outpatient?
 6              MR. MARQUETTE:  Yes, yes, Your Honor, yes.
 7              THE COURT:  I understand.
 8              MR. MARQUETTE:  In the New London area.  There was
 9    even a halfway house in Bloomfield that Mr. Leone suggested I
10    call, but it didn't seem to be a good fit for a variety of
11    reasons.
12              Those are my comments, Your Honor.  I do appreciate
13    your time.  Again, Daniel, I think, is a person worthy of our
14    having faith in him to get his life together, and he does have
15    some deep psychological issues that do need attention.
16              Dr. Daly did a wonderful report.  I spoke with her
17    several times over the past -- many times I should say over the
18    past eight or nine months.  And she cared deeply about Daniel,
19    and I can see that her probeness into Daniel's inner psyche,
20    family life, etc., really pays dividends with the quality of
21    her work.  But it does contain the ultimate conclusion that he
22    has some deep issues that need to be addressed.  I know the
23    Court read it.  I submitted many months ago for a release
24    matter.  I hope the Court will give it the due respect that it
25    warrants.  Thank you, sir.
```

```
 1              THE COURT:  All right.  Daniel -- or how do you want
 2    to proceed?  Do you want to have one of his sisters speak?
 3              MR. MARQUETTE:  If I have full rein, I'll have Daniel
 4    speak.
 5              THE COURT:  Okay, that's fine.  You can stay there,
 6    Mr. Scott.  If you could actually pull your mask up, sir.  I
 7    can hear you even -- I can hear you anyway.
 8              THE DEFENDANT:  First, I just want to say I'm truly
 9    sorry for the way I acted in all the situations, in the state
10    cases like I was --
11              THE COURT:  Probably not a good idea to talk about the
12    state cases.
13              THE DEFENDANT:  Sorry.
14              THE COURT:  Just for your own sake.
15              THE DEFENDANT:  All right.  Well, I want to apologize
16    to how I reacted in this case.  You know, it started out with
17    from her taking money off my debit card, and I asked her
18    multiple times to take it off.  And then it was like when she
19    didn't, that's what really infuriated me.
20              And I feel like that's still not an excuse for the way
21    I reacted.  I could have just cut her off and not talked to her
22    anymore.  But I chose to take that route, and it wasn't the
23    smartest route.  And I'm truly sorry for the way I spoke to her
24    because I got sisters, and I wouldn't want anybody speaking to
25    my sisters like that.
```

```
 1              And also, through me making the choice of going down
 2     there wasn't the smartest, but it was like -- I don't know.  I
 3     wasn't really thinking.  I just really wanted to apologize for
 4     the way I spoke to her, and I wanted to show her -- because
 5     when I went down there, I had my bank statements.  I wanted to
 6     show her this is the stuff that you're denying that you kept
 7     saying you didn't take from me.
 8              I just feel like I messed up when I -- when I took the
 9     steps to threaten her.  That was totally out of line.  I'm
10     really, truly sorry for that.
11              And I really want to work on being a better person and
12     dealing with my mental health and taking that serious because
13     at the end of the day, I want to be a role model to my son.
14     And I love my son more than anything.  And it's like -- I don't
15     know.  I just feel like a failure right now because I was out
16     there doing so good.
17              THE COURT:  You were.  I was quite impressed with the
18     job you had.  I have -- I preside over Reentry Court in
19     Hartford.  Reentry Court is for folks who are returning
20     citizens coming out and want a little extra support.  And we
21     try to get them jobs, among other things.  I wish most of those
22     guys -- and they are all guys right now -- could get a job that
23     was that good, paid benefits, paid a decent wage.  It's a shame
24     what happened here.
25              THE DEFENDANT:  Yeah.
```

A-107

30

```
 1              THE COURT:  Go ahead, sir.
 2              THE DEFENDANT:  I basically ruined everything.  And
 3    that's what bothers me the most, because like I worked so hard
 4    to get to where I was at, and I just threw it all away with my
 5    childish behavior.
 6              I feel I got a lot to say but ...
 7              THE COURT:  I've read your letter, so I have a lot of
 8    it.  But you can keep going.  It's up to you.
 9              THE DEFENDANT:  I'm just -- I'm disappointed in
10    myself.  And I just want to go home to my son.
11              I'm sorry, Your Honor.
12              THE COURT:  I am too.  I wish this hadn't happened.
13              THE DEFENDANT:  I just feel like I really messed up
14    this time.  I don't really got nothing else to say.
15              THE COURT:  All right.  Well, thank you, Mr. Scott.
16              MR. MARQUETTE:  Thank you, Your Honor.
17              THE COURT:  Welcome, ma'am.  You can step right up to
18    the podium.  Tell us your name for the record.
19              MS. SCOTT:  My name is Connie Scott.
20              THE COURT:  The basketball player.
21              MS. SCOTT:  I am.  I am.
22              THE COURT:  I read your letter.  Thank you.
23              MS. SCOTT:  My pleasure.  I want to do whatever I can
24    to help my brother here.
25              I just want to start by saying thank you guys for
```

```
 1    giving me the opportunity to speak.  And as far as what you've
 2    read as far as our family history goes, my siblings and I have
 3    had a very traumatic childhood and upbringing, which I feel has
 4    deterred us all from the success that we deserve in life.
 5            I, myself, have had the opportunity to have, um,
 6    psychiatrical assistance, and that has helped me further myself
 7    in a way that I never thought was possible.  Um, I think here
 8    today and in this situation for my brother is the first time
 9    that it's ever been addressed that he does need assistance with
10    his mental health that will help him be an upstanding citizen
11    and help him further himself in life.  And I think that's the
12    one thing that's been missing this entire time for all of us is
13    the support for our mental health that would -- that he needs
14    to be successful.
15            My brother is the best father that you can ask for,
16    despite the example that we had growing up.  Um, I myself have
17    just had a child, and having my brother in my son's life is, I
18    feel, pivotal to us having a family that we never had the
19    opportunity to have before.
20            And I know that upon his release, he will have support
21    that he was never given before.  And this time I feel he will
22    be able to succeed in a way that he hasn't had the opportunity
23    to do.
24            I don't want -- I'm speaking on behalf of myself and
25    my family.  I know that this time that we will come together
```

A-109

32

1   and we will definitely support my brother and going forward in

2   life in the way that we weren't able to.

3        (Pause.)

4            Oh, my family, myself, I will give my brother a place

5   to stay.  I have a very stable home, just my child and my

6   child's father.  And that will be a very structured place for

7   him.  Um, there's really not much going on there at all.

8            And I think that that will be great for him to have

9   the consistency in his everyday life where he can be, for one,

10  that he can cope with this last experience and that he can move

11  forward from that and just leave the rest of that in the past.

12  He won't have to have any interactions with those that have

13  affected him negatively going forward.

14            I have looked into some counselors that can help him

15  with PTSD and behavioral health and those people that

16  specialize in that in the local area that are more than happy

17  to help him upon his release immediately.

18            I can assist him to get employment.  I, myself, am a

19  general manager of a restaurant in the casino; so I have a lot

20  of contacts where I can help him with his employment going

21  forward.

22            I think that's it.  Thank you so much.

23            THE COURT:  Thank you very much for coming.

24            MS. SCOTT:  My pleasure.

25            MR. MARQUETTE:  Your Honor, there is another sister

1    here.  She respectfully does not want to --

2              THE COURT:  That's fine.  That's fine.

3              MR. MARQUETTE:  That concludes our presentation.

4              THE COURT:  I'll hear from Attorney Freismuth now.

5              MS. FREISMUTH:  Thank you, Your Honor.  The

6    Government, as the Court has indicated, has filed a Sentencing

7    Memorandum, so we won't repeat our arguments.

8              I will say, however, I do appreciate hearing from the

9    Defendant and his family.  The remarks do sound very genuine,

10   especially the remorse and support that is being offered.

11             As Your Honor knows, there are a couple things that

12   the Government views as being a little rare in terms of this

13   case.  It's rare to come into court and ask for a sentence for

14   a defendant who has violated supervised release before and that

15   this is his third federal conviction, his second while on

16   supervised release.

17             The Government also believes that it's rare that there

18   is such a shift in why we're here.  The two prior convictions

19   involved drugs.  This conviction is different.  The Government

20   believes that that is a concerning escalation in behavior,

21   particularly because the changes occurred while he had all the

22   support of the Probation Office.  And everyone who's in this

23   room knows how much support that office offers, every defendant

24   who walks through their door.  And that, I admit, is one of the

25   areas that I'm finding myself a little bit at a loss as not

34

1   being the prosecutor involved in the original cases.

2          When I look at the PSR and the timelines and I hear

3   about the support and I hear about the Defendant's child and

4   his desire to be with the child, that all makes sense.  But

5   when I look at how long all that support appears to be there, I

6   don't hear the reason why it wasn't enough before.

7          In particular, the pending state charges -- and I

8   understand that they are pending state allegations.  They

9   occurred in July of 2019.  They should have been an incredible

10  red flag.  In fact, there was an initial violation report

11  prepared pertaining to those charges.

12         I cannot stand here and think that he was not offered

13  excessive support from the Probation Office in response to what

14  was occurring either shortly before or shortly after.  And he

15  had the same type of family support.  And for whatever reason,

16  what was happening, he was still in the community.  And then in

17  March of 2020 we have the instant conduct.  So that is a period

18  of approximately eight months where he had an incredible amount

19  of support.  And instead of changing his behavior or doing

20  anything different, he offends in an even more -- in a serious

21  way involving a new person and crossing state lines to do so

22  and incurring another federal case.

23         So from the Government, we believe that the conduct is

24  incredibly serious.  His risk to the public is very heightened

25  and that the Court's ability to curtail that with anything

```
 1   other than a prison sentence is limited.
 2          He does -- last time he stood before a court in
 3   federal court he received a 21-month sentence and nine months
 4   for the violation of supervised release to run concurrent.
 5   This time, moving onto my argument, the Government is asking
 6   that any sentence that's imposed for the supervised release
 7   violation be imposed to run consecutive, as recommended by the
 8   guidelines.  We are asking for a sentence at the top of the
 9   range for the instant offense, 33 months, the range calculated
10   by the parties, and somewhere within the guidelines for the
11   supervised release violation.  Thank you.
12          THE COURT:  Thank you, Attorney Freismuth.  All right.
13   As I said, I'm going to take a short recess to reflect on
14   what's been said.  And I'll actually see the probation officers
15   in chambers.
16      (Recess from 10:52 a.m. to 11:05 a.m.)
17          THE COURT:  So as I said at the outset, I'm required
18   to impose sentence in two different matters today.  One is the
19   interstate theft (sic) case, 20-CR-44, and the other is the
20   violation of supervised release.
21          MR. MARQUETTE:  Your Honor?
22          THE COURT:  Yes, sir.
23          MR. MARQUETTE:  Threat.
24          THE COURT:  Excuse me.  Thank you.
25          MR. MARQUETTE:  Okay.
```

```
1              THE COURT:  I've said that twice, and I apologize.  So
2    it's an interstate threat case, not an interstate theft case,
3    and that's CR-44.  The other, of course, is the violation of
4    supervised release in 14-CR-136.
5              I'll begin -- because they're separate, I'm required
6    to explain them separately, although my explanations will
7    overlap somewhat.
8              Beginning with the interstate threat case, 20-CR-44,
9    the law requires me to consider a series of factors before I
10   decide on the sentence.  The factors are set forth in Section
11   3553(a) of Title 18 of the United States Code, and they are:
12   your background and characteristics, Mr. Scott; the nature and
13   circumstances of the crime; the purposes of a criminal
14   sentence.
15             And the purposes of a criminal sentence listed in the
16   law include:  punishment -- punishment itself includes the need
17   for the sentence to reflect the seriousness of the offense and
18   the need for it to promote respect for the law; deterrence --
19   deterrence means discouraging you from committing crimes in the
20   future and discouraging others from committing this type of a
21   crime; protecting the public from further crimes by you; and
22   rehabilitation, which means addressing mental health, substance
23   abuse, etc., needs that you might have.
24             I'm also required -- another factor I'm also required
25   to consider is the sentencing guidelines.  As I said here, the
```

```
1    guidelines range, I think properly calculated, is 46 to 57
2    months.  But I did that say I would impose the Fernandez
3    departure to adopt the range set forth in the parties' Plea
4    Agreement, which was 27 to 33 months.  And that will be my
5    starting point under the guidelines.
6            I also have to consider the need to avoid unwarranted
7    sentence disparities among defendants with similar records who
8    have been found guilty of similar conduct.
9            In short what these factors do is require me, as the
10   sentencing judge, to take all the information I've learned
11   about Mr. Scott, all the information I've learned about the
12   crime, and view it through the lens of these factors I
13   mentioned to determine a sentence that is fair, just, and
14   reasonable, also a sentence that is sufficient but no greater
15   than necessary to serve the purposes of sentencing that I
16   listed a moment ago.
17           Now, I've considered carefully each of the factors
18   here, and I've read the record carefully and I've listened
19   carefully to what was said.  Every case is different, so the
20   best way for me to explain my decision as to the sentence is to
21   walk through these factors and explain how I think they apply
22   here, starting with your background and characteristics.
23           Now, this is a complicated story.  Like most people,
24   you come here with some good things in your background and some
25   bad things in your background.  And I would say that in this
```

```
 1    case, and one of the things that makes this case difficult, is
 2    that you have some really good things and you have some really
 3    bad things.
 4           And the good things I want to start with are that in
 5    spite of what everyone acknowledges was an extremely difficult,
 6    even brutal, childhood that had some lasting effects on you --
 7    and I, of course, agree with the psychological report to that
 8    extent -- you've done some remarkable things, considering that
 9    background.  You graduated from high school.  You proved --
10    have proven yourself to be an effective employee.
11           As I say, it's no small thing that you got and
12    maintained that job at Doncaster, were well regarded there.
13    Having committed another federal felony, they still are
14    interested in having you apply there.  You were a valued
15    employee.  That is no small accomplishment.  I know because, as
16    I say, of my experience here but also my experience in Reentry
17    Court, that's a big deal.  You had benefits.
18           And that shows, I think, that you have real potential.
19    I think you're a bright guy.  I read your letter.  It was well
20    done.  All those things are good.
21           You have good support from your sisters.  And I was
22    impressed with your sister who spoke today.  All that's
23    positive.
24           But there's a very negative side too.  You have a long
25    criminal history.  It includes two previous federal offenses,
```

```
 1   both of which were drug offenses.  It also includes suggestions
 2   of violence at least.  There was the BB gun incident, which is
 3   a conviction.  It was when you were young.  But there was the
 4   running from police.  I think those suggest to me dangerous,
 5   impulsive conduct; and, of course, we have this offense, which
 6   I'll get to in a minute.
 7        The state charges you haven't been adjudicated guilty
 8   of, so I'm not going to rely on them.  I will say they are
 9   troubling to me because they are consistent with the pattern of
10   conduct that was observed in this case.
11        Also of importance to me, and of importance for
12   sentencing purposes, is the fact that this is actually the
13   third time you have violated either supervised release or
14   probation going back to the beginning.  You violated federal
15   supervised release previously, and now you violated again.  And
16   there's, I believe, a violation of probation earlier on.  But
17   in any event, whether it's two or three, it's a pattern that
18   shows disrespect for the law.  And it's -- that's a serious
19   problem.
20        And I'll just say one more thing about your background
21   and characteristics, and it's not positive.  Mr. Marquette said
22   at one point, "that's the way his mind works."  I don't dispute
23   that.  I don't dispute that you get angry and you're impulsive,
24   and I don't dispute also where that comes from.  I think the
25   psychological report does a thorough job laying out your
```

1    history, your family's history, and it's easy to see where that

2    comes from.

3              But at the end of the day, you're 33.  That's not an

4    excuse anymore, and it's not acceptable.  You know, when you're

5    18 and you're 20 and you're 23 maybe, those kinds of things you

6    can say, well, you know, we need to give this person more time.

7              You've had the time.  You've been in federal prison

8    before twice.  You've been on supervised release.  It's not

9    acceptable for you not to -- not to take the steps that you

10   need to take, whether it be getting counseling or other things,

11   to control your anger.

12             And that brings to us the nature and circumstances of

13   this crime.  I agree with Attorney Freismuth.  If anything, I

14   think she understated.  This is an extremely serious crime.

15   This is a violent crime.  You might say, "I didn't touch her."

16   It doesn't matter.  Threats of violence are a violent crime.

17   And threats of violence are aimed at intimidating and

18   frightening people and can do so sometimes more effectively

19   than physical violence.

20             There's no question that the victim in this case is

21   terrified of you.  It's apparent -- it practically breathes

22   from the Presentence Report.  She doesn't -- she is terrified

23   of you.  She doesn't want -- she wants you to get out.  She

24   thinks it's a big misunderstanding, but at the same time she's

25   saying, "Don't contact me."  And that's because she's afraid of

```
1    you.  She's afraid, frankly, of what you'll do by way of
2    retaliation.  And who could blame her, Mr. Scott?
3              As you said before, you wouldn't like it if someone
4    treated your sisters like that.  And, unfortunately, this seems
5    to be a broader pattern with women, at least if any of those --
6    any of those allegations in the state court matters have any
7    substance to them.  But I don't need to rely on them.  It's
8    apparent from this.  And threats of violence are very serious
9    matters; and, unfortunately, I've got to take them seriously
10   today.
11             So turning to the purposes of a criminal sentence that
12   need to be served here, there are several.  But far at the top
13   of the list is the need to protect the public.  This purpose
14   screams out from the Presentence Report in this case.  There's
15   clearly a need for the Court to take steps to do what it can to
16   protect the public from further threats of violence or further
17   violence by you.
18             I'm not even talking about dealing drugs at this
19   point, and there's a record of that as well.  There's a need,
20   of course, for the sentence to reflect the seriousness of the
21   offense, and there's a need for the sentence to promote respect
22   for the law.  And this, as I said before, occurred while you
23   were on supervised release.  It's the third time you were under
24   court-imposed sentence or second when -- in which you violated.
25   And the sentence needs to take account of that.
```

```
 1              Turning to the guidelines, frankly, a 46- to 57-month
 2   sentence, which is the original guideline range, would be a
 3   plainly reasonable sentence here.  I think you could make an
 4   argument that a higher sentence would be reasonable given the
 5   seriousness of the conduct.  Nonetheless, I said I would, and I
 6   will, grant the Fernandez departure in this case, in the main
 7   case, to adopt the parties' proposed range of 27 to 33 months
 8   because ultimately I'll be able to deal with the need to
 9   protect the public in -- by combining the two sentences.
10              So for the reasons I've stated, I find that the
11   following sentence -- in terms of the issue of disparities,
12   it's fairly standard for the Court to adopt a Fernandez
13   departure, which is what I've done.  So for the reasons I've
14   stated, Mr. Scott, I find that the following sentence is the
15   one in the interstate threat case, 20-CR-44, is the one that is
16   sufficient but no greater than necessary to serve the purposes
17   of sentencing.  Please stand.
18              I sentence you to 33 months of imprisonment.  I
19   sentence you to three years of supervised release.
20              In addition to the standard conditions of supervised
21   release, the following mandatory conditions are imposed:
22   first, the Defendant shall not commit another federal, state,
23   or local offense; second, he shall not unlawfully possess a
24   controlled substance; third, he shall refrain from any unlawful
25   use of a controlled substance and submit to one drug test
```

A-120

43

1   within 15 days of release on supervised release and at least

2   two periodic drug tests thereafter for use of a controlled

3   substance; next, he shall pay the assessment imposed in

4   accordance with Title 18 United States Code Section 3013; next,

5   he shall cooperate in the collection of a DNA sample.

6          In addition, the following special conditions of

7   supervised release are imposed:

8          First, you must submit your person, residence, office,

9   or vehicle to a search conducted by a probation officer at a

10   reasonable time and in a reasonable manner based upon

11   reasonable suspicion of contraband or evidence of a violation

12   of a condition of release.  Failure to submit to a search may

13   be grounds for revocation.  You must inform other residents

14   that the premises may be subject to searches under that

15   condition.  The basis for that particular condition is -- are

16   your previous drug convictions.

17          Next, you must participate in a program recommended by

18   Probation and approved by the Court for mental health treatment

19   with a focus on trauma-centered therapy.  You must follow the

20   rules and regulations of that program.  The probation officer,

21   in consultation with the treatment provider, will supervise

22   your participation in the program.  You must pay all or a

23   portion of the costs associated with treatment based on your

24   ability to pay as recommended by Probation and approved by the

25   Court.  I will order, unless defense counsel objects, that the

```
 1   psychological report by Ms. Daly be attached to the Presentence
 2   Report.
 3           Is there any objection to that, Mr. Marquette?
 4           MR. MARQUETTE:  I would agree.  No objection.
 5           THE COURT:  Okay.  And that that report also be
 6   provided to the treatment provider.
 7           Mr. Leone, is that all right, sir?
 8           MR. LEONE:  Yes, Your Honor.
 9           THE COURT:  Okay.  Okay.  Next, you must participate
10   in a program recommended by Probation and approved by the Court
11   for inpatient or outpatient substance abuse treatment and
12   testing.  You must follow the rules and regulations of that
13   program.  The probation officer will supervise your
14   participation in the program.  You must pay all or a portion of
15   the costs associated with treatment based on your ability to
16   pay, as recommended by the probation officer and approved by
17   the Court.  That's based on past substance abuse history --
18   give me one second -- as reflected in paragraph 69 through 73
19   of the Presentence Report.
20           Next, you are prohibited from any contact whatsoever
21   directly or indirectly with the victim in this case known as
22   K.P.
23           In addition, you must abide by any restraining or
24   protective orders imposed by the courts of the State of
25   Connecticut.
```

A-122

45

```
1              I impose no fine.

2              I impose a special assessment of $100.

3              All right.  Does either counsel know of any reason

4    that the sentence I've described cannot legally be imposed at

5    the sentence of the Court?

6              MS. FREISMUTH:  No, Your Honor.

7              MR. MARQUETTE:  No, sir.

8              THE COURT:  All right.  Mr. Scott, the sentence I've

9    described is imposed as the sentence in your case, 20-CR-44.

10   The judgment will be prepared for my signature by the Clerk's

11   Office in consultation with the Probation Office.

12             In your Plea Agreement you waived your right to appeal

13   as long as the sentence imposed did not exceed 33 months of

14   imprisonment, three years of supervised release, a $100 special

15   assessment, and a fine of $250,000.  The sentence I've imposed

16   appears to fall within those parameters, so it does appear

17   you've waived your right to appeal.  Nonetheless, if you wish

18   to appeal, you must file a written notice of appeal within 14

19   days of the entry of judgment.

20             Do you understand?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Okay.  If you wish to appeal but you can

23   cannot afford to do so, you can apply for leave to appeal in

24   forma pauperis.  If the motion is granted, the Court will waive

25   the filing fee for your appeal and appoint counsel to represent
```

1   you at no cost to you.

2           Do you understand?

3           MR. MARQUETTE:  May I put something on the record,

4   Your Honor?

5           THE COURT:  I just want to make sure he understood

6   what I just said.  Did you understand?

7           THE DEFENDANT:  Yeah.

8           THE COURT:  Yes?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  I just didn't hear you.  Sorry.

11          MR. MARQUETTE:  Mr. Scott, I will not be filing any

12  appeal unless you notify me in writing within ten days of

13  today.  Thank you, sir.

14          THE COURT:  All right.  Did the Government have a

15  motion to dismiss the remaining counts of the Indictment, I

16  believe Counts 2 through 8 as to Mr. Scott?

17          MS. FREISMUTH:  We would so move, Your Honor, yes.

18          THE COURT:  All right.  That motion's granted.

19          All right.  You can have a seat.  I'm now going to

20  move to sentencing in the other matter, which is 14-CR-136, the

21  violation matter.  As I said, some of my explanation overlaps,

22  and I will adopt my remarks from the other proceeding.

23          I do need to point out, though, that sentencing for a

24  violation of supervised release is governed not by 3553(a) but

25  by 3583, Title 18 United States Code Section 3583(e), and that

A-124

47

1   section directs the Court to consider almost all of the factors

2   that are set forth in Section 3553(a), defendant's background

3   and characteristics, the nature and circumstances of the

4   offense, and the other factors I mentioned except for

5   punishment.

6          And punishment, as I mentioned, includes the need for

7   the sentence to reflect the seriousness of the offense and the

8   need for the sentence to promote respect for the law.  So those

9   two factors encompassed in punishment I will not be considering

10  as part of my sentence on the violation.  But the other factors

11  I will be considering.

12         Also, one of the purposes of sentencing with regard to

13  a violation of supervised release is not so much to address the

14  underlying crime but to address the breach of the trust with

15  the Court that is inherent in violating the terms of supervised

16  release.

17         So having considered all of that, all of the factors

18  I'm required to consider under 3583(e), once again, the nature

19  and circumstances of the offense, which as I described before I

20  view as extremely serious, the history and characteristics of

21  the Defendant, including his unfortunately repeated violations

22  of either supervised release or probation and, again,

23  principally the need to protect the public from further crimes

24  by the Defendant, I find that the sentence necessary to carry

25  out these purposes is, in fact, 24 months to run consecutive.

```
 1              I know that Mr. Marquette requested that it not run
 2     consecutive.  The guidelines do recommend a consecutive
 3     sentence.  I do not always impose sentence on violation of
 4     supervised release to run consecutive.  Here I think it's
 5     warranted in light of the need to protect the public and the
 6     nature and circumstances of the offense conduct.
 7              And as I said before, I impose this sentence
 8     regardless of whether the interstate threat offense is properly
 9     considered a Grade A or a Grade B violation.  I would impose
10     the same sentence even if it was a Grade B violation.  There
11     the guidelines range would be 18 to 24 months, and I would
12     impose the 24 months at the top of the range for the reasons
13     I've indicated.  And again I adopt my remarks from the
14     sentencing in 20-CR-44 except the remarks with respect to
15     factors I'm not allowed to consider here reflecting the
16     seriousness of the offense and promoting respect for the law.
17              So I find that the sentence that is best suited to all
18     the purposes that I'm required to consider here is the 24-month
19     sentence to run consecutively, and let me just say one more
20     thing.
21              Mr. Scott, I imagine you're disappointed.  I would say
22     that I think given the seriousness of your conduct -- well, I
23     know that given the seriousness of your conduct, I would have
24     imposed a higher sentence.  I would not have done the Fernandez
25     departure unless I thought there was some hope for you.  I
```

**A-126**

49

```
1    think you are going to need to get intensive mental health
2    treatment.  I've provided for that in the underlying case.
3             I think that you have a lot of ability, a lot of
4    potential.  You have a lovely -- you have lovely sisters who
5    are there for you.  But if you can't get control of your past
6    and your anger and let it stop dictating how you react to
7    things, you will not succeed.  And I'm afraid of what might
8    happen.  I hope that doesn't happen for you.
9             You've shown that you're capable of doing programming.
10   I'd encourage you to do it.  But at the end of the day, it's on
11   you to do those things.  It's not on the Court.  It's not on
12   your sisters.  It's not on Mr. Marquette.  It's on you.
13            So the appeal rights are the same.  You have 14
14   days -- there is no waiver.  You have a plenary right to appeal
15   this sentence in the violation case, the 24 months.  You have
16   to file a written notice of appeal within 14 days.
17            You understand that?  Yes?
18            THE DEFENDANT:  Yes, Your Honor.
19            THE COURT:  Okay.  And if you can't -- same thing
20   applies.  If you can't afford to pay the filing fee, the Court
21   will appoint counsel to represent you at no cost to you and the
22   notice of appeal -- well, I'll leave it at that.  You can --
23   the filing fee will be waived.
24            Do you understand that?
25            THE DEFENDANT:  Yes, Your Honor.
```

**A-127**

50

```
 1          THE COURT:  Okay.  All right.  Is there anything else
 2    we should discuss today?
 3          MS. FREISMUTH:  Your Honor, I may have missed it, but
 4    did the Court impose any term of supervised release for the
 5    2014 case or is it just --
 6          THE COURT:  No.  Sorry.  I should -- that's a good
 7    point.  I'm not imposing any additional term of supervised
 8    release for the -- in the violation case, just the 24 months
 9    with no term -- in prison with no term of supervised release to
10    follow.  I did impose three years of supervised release in the
11    main case.  Thank you for pointing that out.
12          MS. FREISMUTH:  Thank you.  Nothing else, Your Honor.
13          THE COURT:  Mr. Marquette?
14          MR. MARQUETTE:  Nothing further.
15          THE COURT:  Did you have a request for designation?
16          MR. MARQUETTE:  Well, clearly, I think that I would
17    defer to the Court.  The one that provides extensive
18    psychological services request for Devens would be the most
19    suitable but, of course --
20          THE COURT:  I'm happy to recommend Fort Devens.  I
21    know the family is here in Connecticut, I believe.  Danbury's a
22    little bit closer, but Devens is in Massachusetts, I believe,
23    Western Mass.; right?
24          MR. MARQUETTE:  I don't think Danbury offers as
25    extensive psychological services.
```

1           THE COURT:  I'm happy to make the Fort Devens
2    recommendation.
3           I think just for the family and Mr. Scott, I want to
4    explain I can only make a recommendation.  The Bureau of
5    Prisons, which is not part of the Judicial Branch of
6    Government, it's part of the executive branch, makes the
7    decision where Mr. Scott will be.  I will recommend Fort Devens
8    based on Mr. Marquette's request.
9           Is there anything else to discuss today?
10          MR. MARQUETTE:  No, sir.  Thank you.
11          MS. FREISMUTH:  No, Your Honor.  Thank you.
12          THE COURT:  We'll be in recess.  Thank you.
13      (Pause.)
14          THE COURT:  As a matter of record, this is for Mr.
15   Scott's benefit, so I just want to explain this so it's very
16   clear for the state court judge.  This will only take a second.
17          With regard -- back on the record in the supervised
18   release violation matter, which was 14-CR-136.  I'm dismissing
19   the violations that are based on the state court conduct --
20   excuse me.  I'm dismissing the alleged violations that are
21   based on conduct that is the subject of the state court
22   charges.  I'm dismissing those.  It's up to the state judge to
23   decide what to do, if anything, on those.  But those, just for
24   the record, those violations are dismissed.  All right?  Any
25   questions about that?

A-129

52

1          MS. FREISMUTH:  Not from the Government, Your Honor.

2          MR. MARQUETTE:  One other thing.  I know that federal

3    benefits could be denied at a certain point.  I don't think

4    that applies in this case because -- correct?

5          THE COURT:  I'm not the one who's involved in

6    decisions to deny benefits.  You're referring to various

7    statutes in the drug area; is that right?

8          MR. MARQUETTE:  Yes.

9          THE COURT:  I don't -- I haven't -- I haven't boned up

10   on that, and I'm not the one who makes those decisions.  So you

11   would need to check that out.

12         MR. MARQUETTE:  Thank you, sir.

13         THE COURT:  We'll be in recess.  Thank you.

14      (Proceedings concluded at 11:30 a.m.)

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3                       C E R T I F I C A T E

 4

 5

 6

 7              I, Julie L. Monette, RMR, CRR, CRC, Official

 8   Court Reporter for the United States District Court for the

 9   District of Connecticut, do hereby certify that the foregoing

10   pages are a true and accurate transcription of my shorthand

11   notes taken in the aforementioned matter to the best of my

12   skill and ability.

13

14

15                       /S/ JULIE L. MONETTE
                         _____
16                       Julie L. Monette, RMR, CRR, CRC
                              Official Court Reporter
17                               450 Main Street
                            Hartford, Connecticut 06103
18                               (860) 212-6937

19

20

21

22

23

24

25
```

A-131

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| | ) | |
| v. | ) | Case Number: **3:20-CR-00044-MPS(1)** |
| | ) | USM Number:   **18251-014** |
| **DANIEL SCOTT** | ) | |
| | ) | _Natasha Freismuth_ |
| | ) | Assistant United States Attorney |
| | ) | |
| | ) | _Richard C. Marquette_ |
| | ) | Defendant's Attorney |

**THE DEFENDANT:** pled guilty to Count 1 of the Indictment.

Accordingly, the defendant is adjudicated guilty of the following offense(s):

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 875 (c) | Making Interstate Threats | March 2, 2020 | 1 |

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The Court imposed a downward departure under _U.S. v. Fernandez_ and sentenced the defendant to the top of the resulting Guidelines range, taking into account especially the need to protect the public and to reflect the seriousness of the offense, as well as the fact that the Court imposed a fully consecutive sentence in the related violation matter (14cr136).

**IMPRISONMENT**

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **33** months, to run consecutively with his sentence in case 3:14-cr-00136.

**SUPERVISED RELEASE**

Upon release from imprisonment, the defendant shall be on supervised release for a term of **3** years. The Mandatory and Standard Conditions of Supervised Release as attached, are imposed. In addition, the following Special Conditions are imposed:

1. You must submit your person, residence, office, or vehicle to a search, conducted by a Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must inform any other residents that the premise may be subject to searches pursuant to this condition.

A-132

Judgment in a Criminal Case                                            Judgment -- Page 2 of 4

DEFENDANT: DANIEL SCOTT
CASE NUMBER:3:20-CR-00044-MPS(01)

2.  You must participate in a program recommended by the Probation Office and approved by the Court for mental health treatment with a focus on trauma-centered therapy.  You must follow the rules and regulations of that program.  The Probation Officer, in consultation with the treatment provider, will supervise your participation in the program.  You must pay all or a portion of costs associated with treatment based on your ability to pay as recommended by the probation Officer and approved by the Court.

3.  You must participate in a program recommended by the Probation Office and approved by the Court for inpatient or outpatient substance abuse treatment and testing.  You must follow the rules and regulations of that program.  The Probation Officer will supervise your participation in the program.  You must pay all or a portion of costs associated with treatment based on your ability to pay as recommended by the Probation Officer and approved by the Court.

4.  You must avoid all contact, directly or indirectly, with the victim in this case known as K.P.  In addition, you must abide by any other active restraining and/or protective orders imposed by any court.

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments as follows:

**Special Assessment:**     $100.00

It is further ordered that the defendant will notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are paid.

Counts 2-8 are dismissed on the motion of the Government.

## JUDICIAL RECOMMENDATION TO THE BUREAU OF PRISONS

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant serve his term of incarceration at Ft Devens

**August 19, 2021**
Date of Imposition of Judgment

/s/
Signature of Judge

**MICHAEL P. SHEA**
**UNITED STATES DISTRICT JUDGE**
Name and Title of Judge

**August 23, 2021**
Date

A-133

Judgment in a Criminal Case                                                    Judgment -- Page 3 of 4

DEFENDANT: DANIEL SCOTT
CASE NUMBER:3:20-CR-00044-MPS(01)

## CONDITIONS OF SUPERVISED RELEASE
**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

### MANDATORY CONDITIONS

(1) You must not commit another federal, state or local crime.

(2) You must not unlawfully possess a controlled substance.

(3) You must refrain from any unlawful use of a controlled substance.  You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

(4) ☐ You must make restitution in accordance with 18 U.S.C.§§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

(5) ■ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

(6) ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

(7) ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

### STANDARD CONDITIONS

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

(1)   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
(2)   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
(3)   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
(4)   You must answer truthfully the questions asked by your probation officer.
(5)   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
(6)   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
(7)   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
(8)   You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
(9)   If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
(10) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
(11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
(12) If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
(13) You must follow the instructions of the probation officer related to the conditions of supervision.
    Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment</u>, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

A-134

Judgment in a Criminal Case                                                          Judgment -- Page 4 of 4

DEFENDANT: DANIEL SCOTT
CASE NUMBER:3:20-CR-00044-MPS(01)


These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed) _____          _____
         Defendant                                         Date

         _____          _____
         U.S. Probation Officer/Designated Witness         Date




CERTIFIED AS A TRUE COPY ON THIS DATE: _____
By: _____
    Deputy Clerk




RETURN
I have executed this judgment as follows:

Defendant delivered on _____ to _____ at _____,
with a certified copy of this judgment.


                                                    Lawrence Bobnick
                                                    Acting United States Marshal

                                        By  _____
                                                    Deputy Marshal

A-135

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**UNITED STATES OF AMERICA**             : CASE NO. 3:20CR00044 (MPS)

**VS.**

**DANIEL SCOTT**                          : SEPTEMBER 10, 2021

**NOTICE OF APPEAL**

PLEASE TAKE NOTICE that the defendant Daniel Scott hereby appeals to the United

States Court of Appeals for the Second Circuit from the sentence of the District Court, filed on

August 23, 2021 (Doc. 84).

Respectfully Submitted,

DANIEL SCOTT
BY: /s/Richard C. Marquette
Richard C. Marquette, Esq. (#ct07585)
GOLDBLATT, MARQUETTE & RASHBA, PC
60 Washington Avenue, Suite 302
Hamden, CT 06518
Tel. (203) 288-6293 / Fax.(203) 288-0283
Email: RCMarquette@aol.com

A-136

CERTIFICATION OF SERVICE

This is to certify that on September 10, 2021, a copy of the foregoing was filed with the Court via the CM/ECF system, by which counsel to all parties, including the Government, will be notified of and have the opportunity to review this filing.

BY: /s/Richard C. Marquette
Richard C. Marquette, Esq. (#ct07585)
GOLDBLATT, MARQUETTE & RASHBA, PC
60 Washington Avenue, Suite 302
Hamden, CT 06518
Tel. (203) 288-6293
Fax (203) 288-0283
Email: RCMarquette@aol.com

LF 245D   (03/2019) Judgment in a Criminal Case for Revocations
          Sheet 1

# UNITED STATES DISTRICT COURT

### District of Connecticut

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE**<br>(For **Revocation** of Probation or Supervised Release) |
| v. | |
| | Case Number: 0205 3:14CR00136-001 |
| Daniel D Scott | USM Number: 18251-014 |
| | Richard Marquette |
| | Defendant's Attorney |

**THE DEFENDANT:**

☑ admitted guilty to violation of condition(s) <u>Standard 3, Mandatory 1 (3/6/20)</u>   of the term of supervision.

☐ was found in violation of condition(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| 1 | "The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer" | 03/02/2020 |
| 2 | "The defendant shall not commit another federal, state, or local offense" | 03/02/2020 |
| | | |

*Check this box if you require additional space for more violation(s).* ☐

The defendant is sentenced as provided in pages 2 through   3   of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☑ The defendant has not violated condition(s) <u>statecharges</u>  and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

|  |  |
|---|---|
| | August 19, 2021 |
| | Date of Imposition of Sentence |
| | **Michael Shea** Digitally signed by Michael Shea<br>Date: 2021.08.24 14:06:51 -04'00' |
| | Signature of Judge |
| | Honorable Michael P. Shea |
| | U.S. District Judge |
| | Name and Title of Judge |
| | August 19, 2021 |
| | Date |

A-138

Judgement --Page 2 of 4

LF 245D   (Rev. 03/2019) Judgment in a Criminal Case for Revocations
Sheet 2 -- Imprisonment

DEFENDANT:      Daniel D Scott
CASE NUMBER:    0205 3:14CR00136-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

24 months, consecutive to sentence in Docket No. 3:20CR00044 (MPS), no supervised release to follow

☑   The court makes the following recommendations to the Bureau of Prisons:

Defendant be designated to Fort Devens MCI.

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at                 on

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
DEPUTY UNITED STATES MARSHAL

A-139

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**UNITED STATES OF AMERICA**          **: CASE NO. 3:14CR0136 (MPS)**

**VS.**

**DANIEL SCOTT**                                  **: SEPTEMBER 15, 2021**

**NOTICE OF APPEAL**

PLEASE TAKE NOTICE that the defendant Daniel Scott hereby appeals to the United

States Court of Appeals for the Second Circuit from the judgment of the District Court, entered

on August 24, 2021 (Doc. 65).

AUSA Sandra Glover and AUSA Natasha Freismuth do not object to the filing of this

Notice of Appeal.

Respectfully Submitted,

DANIEL SCOTT
BY: /s/Richard C. Marquette
Richard C. Marquette, Esq. (#ct07585)
GOLDBLATT, MARQUETTE & RASHBA, PC
60 Washington Avenue, Suite 302
Hamden, CT 06518
Tel. (203) 288-6293 / Fax.(203) 288-0283
Email: RCMarquette@aol.com

A-140

CERTIFICATION OF SERVICE

This is to certify that on September 15, 2021, a copy of the foregoing was filed with the Court via the CM/ECF system, by which counsel to all parties, including the Government, will be notified of and have the opportunity to review this filing.

BY: /s/Richard C. Marquette
Richard C. Marquette, Esq. (#ct07585)
GOLDBLATT, MARQUETTE & RASHBA, PC
60 Washington Avenue, Suite 302
Hamden, CT 06518
Tel. (203) 288-6293
Fax (203) 288-0283
Email: RCMarquette@aol.com

STATE OF NEW YORK    )                        **AFFIDAVIT OF SERVICE**
                         )    ss.:             **BY MAIL**
COUNTY OF NEW YORK    )

I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

       **On April 20, 2022**

deponent served the within: **Appendix for Defendant-Appellant**

       **upon:**

**See attached for service list**

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, in a postpaid properly addressed wrapper in a Post Office Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on April 20, 2022**

**MARIANA BRAYLOVSKIY**
Notary Public State of New York
No. 01BR6004935
Qualified in Richmond County
Commission Expires March 30, 2026         **Job# 312614**

**NATASHA FREISMUTH, AUSA**
**U.S. ATTORNEY'S OFFICE**
**157 Church Street**
**New Haven, CT 06510**
**(representing the Plaintiff! Appellee)**

**Daniel D. Scott #18251-014**
**USP-Big Sandy**
**1197 Airport Road**
**Inez, KY 41224**
**(Defendant-Appellant)**