**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 21-2166, 21-2224 _____    _____ Caption [use short title] _____

**Motion for:** Dismissal and summary affirmance

_____

_____

Set forth below precise, complete statement of relief sought:

Dismissal of appeal in No. 21-2166 based on appeal waiver

and summary affirmance of appeal in No. 21-2224

US v. Daniel Scott

_____

_____

_____

_____

**MOVING PARTY:** United States   **OPPOSING PARTY:** Daniel Scott

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner   ☑ Appellee/Respondent

**MOVING ATTORNEY:** Natasha Freismuth, AUSA   **OPPOSING ATTORNEY:** Richard Marquette, Esq.

[name of attorney, with firm, address, phone number and e-mail]

US Attorney's Office, 157 Church St., 25th Fl.   Goldblatt, Marquette & Rashba, PC

New Haven, CT 06510   60 Washington Ave., 3rd Fl., Hamden, CT 06518

203-821-3787; natasha.freismuth@usdoj.gov   203-288-6293; RCMarquette@aol.com

Court- Judge/ Agency appealed from: US Dist. Court for the Dist. of Connecticut; Judge Michael P. Shea

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes   ☐ No (explain): _____
_____

Opposing counsel's position on motion:
☑ Unopposed   ☐ Opposed   ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes   ☑ No   ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____
_____
_____
_____

Is oral argument on motion requested?   ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No If yes, enter date: _____

**Signature of Moving Attorney:**

/s/ _____ **Date:** July 15, 2022   Service by: ☑ CM/ECF   ☐ Other [Attach proof of service]

UNITED STATES OF AMERICA,      Nos. 21-2166 and 21-2224
            Appellee,

   -v-

DANIEL SCOTT,
            Defendant-Appellant.

## MEMORANDUM IN SUPPORT OF MOTION TO WITHDRAW AND GOVERNMENT'S CROSS-MOTION FOR <u>DISMISSAL AND SUMMARY AFFIRMANCE</u>

Pursuant to Local Rule 27.1, the appellee United States of America submits this memorandum in support of defense counsel's *Anders* motion to withdraw as counsel and its cross-motion for dismissal and summary affirmance. In No. 21-2166, because the defendant validly waived his appellate rights in his plea agreement, and because defense counsel has filed a brief pursuant to *United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000), confirming that there are no unwaivable claims remaining for the defendant to pursue on appeal, the government respectfully requests that this Court dismiss the defendant's appeal. In No. 21-2224, because there are no non-frivolous issues to raise on appeal, the government respectfully moves for summary affirmance.

## Background

On June 23, 2014, in the "2014 matter," Daniel Scott pled guilty to an information admitting possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Government Appendix ("GA__") 2 (Doc. Nos. 1–4), GA10–GA20. On October 28, 2014, the district court sentenced Scott to 21 months of imprisonment, followed by 36 months of supervised release. GA4 (Doc. No. 18), GA21–GA23. On July 17, 2019, a Probation Form 12C Petition was filed alleging that Scott had violated the conditions of supervised release, and the district court issued a summons for Scott to appear regarding those allegations. GA4 (Doc. Nos. 22–23), GA24–GA25. After his initial presentment regarding violations of supervised release on August 6, 2019, the defendant remained in the community on bond, GA5 (Doc. No. 30), and the district court granted motions to continue the violation hearing, *see* GA5.

On March 4, 2020, Scott was arrested by criminal complaint for making interstate threats in a separate matter, the "2020 matter." GA39, Appellant Appendix ("AA__") 2. Shortly thereafter, a second Probation Form 12C Petition was filed in the 2014 matter, and the district court

2

issued a summons for Scott to again appear regarding violations of su-
pervised release based on the conduct in the 2020 matter. GA6 (Doc. Nos.
39–40, 45), GA40–GA41.

On March 10, 2020, a federal grand jury returned an indictment
charging the defendant with eight counts of making interstate threats
based on the conduct giving rise to Scott's March 4, 2020 arrest. AA3
(Doc. No. 11), GA61–GA65. On March 13, 2020, defense counsel filed a
notice of related cases. GA6 (Doc. No. 49), AA3 (Doc. No. 15).

On March 9, 2021, in the 2020 matter, the defendant entered a plea
of guilty to Count One of the Indictment. AA8 (Doc. No. 60), AA11–AA19.[1]
The plea agreement contained an appeal waiver provision, which pro-
vided as follows:

> The defendant acknowledges that under certain circum-
> stances, he is entitled to challenge his sentence. In considera-
> tion for the benefits offered under this agreement, the defend-
> ant agrees not to appeal or collaterally attack the sentence in
> any proceeding, including but not limited to a motion under
> 28 U.S.C. § 2255 and/or § 2241, if that sentence is not more
> than 33 months of imprisonment, a three-year term of super-
> vised release or less, a $250,000 fine or less, and a $100 spe-
> cial assessment even if the Court imposes such a sentence
> based on an analysis different from that specified above. The
> Government and the defendant agree that this waiver applies

---

[1] The plea agreement did not address the pending supervised release vi-
olations in the related case, the 2014 matter.

3

regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

AA16. During the plea colloquy, the district court reviewed the appeal waiver provision with the defendant, who confirmed his understanding of that provision. AA64–AA66.

On August 19, 2021, the district court held a consolidated hearing regarding Scott's sentencing in the 2020 matter and Scott's violation of supervised release in the 2014 matter. GA8 (Doc. No. 64), AA9 (Doc. No. 82). At the conclusion of the hearing, the district court ordered Scott's supervised release revoked in the 2014 matter and imposed a 24-month sentence without any period of supervised release to follow. GA8 (Doc. No. 65), AA137–AA138. For the making-interstate-threats conviction (the 2020 matter), the district court imposed a 33-month sentence, followed by three-years' supervised release. AA131–AA134. The 33-month sentence in the 2020 matter was imposed consecutive to his 24-month

sentence for violating supervised release in the 2014 matter. AA131. Judgments in both cases entered August 24, 2021. GA8 (Doc. No. 65), AA9 (Doc. No. 84).

On September 15, 2021, Scott filed a timely (pursuant to an extension) notice of appeal in the 2014 matter, and that appeal was docketed in this Court as 21-2224. GA8 (Doc. No. 66), AA139. On September 10, 2021, he filed a timely (pursuant to an extension) notice of appeal in the 2020 matter that was docketed in this Court as 21-2166. AA10 (Doc. No. 87), AA135.

On February 11, 2022, this Court granted the government's motion to consolidate the two appeals. On April 15, 2022, the defendant's counsel on appeal moved to withdraw from representation of the defendant in this appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## Discussion

In accordance with the Supreme Court's decision in *Anders v. California*, court-appointed appellate counsel may move to be relieved from his or her duties if "counsel is convinced, after conscientious investigation, that the appeal is frivolous." 386 U.S. at 741. "In support of the motion, defense counsel must supply a brief identifying by record references

any issues that have at least arguable merit supported by legal authority, and explain why they are frivolous." *United States v. Arrous*, 320 F.3d 355, 358 (2d Cir. 2003). "This Court will not grant a so-called *Anders* motion unless it is satisfied that (1) 'counsel has diligently searched the record for any arguably meritorious issue in support of his client's appeal,' and (2) 'defense counsel's declaration that the appeal would be frivolous is, in fact, legally correct.'" *Id.* (quoting *United States v. Burnett*, 989 F.2d 100, 104 (2d Cir. 1993)).

Defense counsel also is obligated to serve the *Anders* motion on the defendant and to inform the client of the right to file a *pro se* brief. *Arrous*, 320 F.3d at 358. Where counsel is aware that the defendant does not speak English, counsel must make reasonable efforts either (a) to provide a written translation of the *Anders* brief in the defendant's native language, or (b) to contact the defendant in person or by telephone, with the aid of an interpreter if necessary. *United States v. Leyba*, 379 F.3d 53, 55–56 (2d Cir. 2004). Similarly, if counsel is aware that the defendant is illiterate, then counsel should "make some reasonable effort to contact the defendant in person to explain the contents of the *Anders* notice documents or arrange to have someone read them to him." *United States v.*

*Santiago*, 495 F.3d 27, 30 (2d Cir. 2007). "Where the defendant is in custody at a distant facility, counsel should make a reasonable effort to assure that someone is available, including perhaps an employee of the correctional facility, to read aloud the *Anders* notice documents to the defendant in a language he understands." *Id.*

In *United States v. Gomez-Perez*, 215 F.3d 315 (2d Cir. 2000), this Court outlined the procedure for appellate counsel to follow where a defendant waives his appellate rights in a plea agreement, yet nevertheless files a notice of appeal. As the Court explained, the government may file a motion to dismiss the appeal based on the waiver, in an effort to "reap its bargained-for benefit." *Id.* at 318. Appellate counsel for the defendant then should file a response, limited to a discussion of whether there is any "basis to contest the validity of the waiver." *Id.* at 319. If counsel believes there is no such basis, then counsel should file an *Anders* brief

> that addresses only the limited issues of: (1) whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent; or (2) whether it would be against the defendant's interest to contest his plea; and (3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances.

*Id.* at 319 (citations omitted).

7

This Court has long recognized that "in no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless." *United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993); *see also United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010) ("Waivers of the right to appeal a sentence are presumptively enforceable."); *United States v. Djelevic*, 161 F.3d 104, 106 (2d Cir. 1998) (per curiam) ("It is by now well-settled that a defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed upon guideline range is enforceable."). A waiver is generally enforceable against the defendant as long as the record clearly demonstrates that the defendant knowingly and voluntarily waived his right to appeal. *See United States v. Coston*, 737 F.3d 235, 237–38 (2d Cir. 2013) (per curiam) (enforcing appeal waiver in part because defendant "fully understood precisely what he was giving up in agreeing to waive his appellate rights"); *United States v. Riggi*, 649 F.3d 143, 147 (2d Cir. 2011) ("We have repeat-

edly upheld the validity of appeal waivers if they are knowingly, voluntarily, and competently provided by the defendant.") (internal quotation marks and modifications omitted); *United States v. Woltmann*, 610 F.3d 37, 40 (2d Cir. 2010) ("Ordinarily, appeal waivers are enforced—and for good reason.").

Exceptions to the enforceability of appellate waivers "occupy a very circumscribed area of our jurisprudence." *Gomez-Perez*, 215 F.3d at 319. "Mindful of the benefit of reduced litigation sought by the government, [this Court has held] that counsel submitting an *Anders* brief in these situations is restricted to the narrow subset of issues previously outlined." *Id.* at 320. In the event that appellate counsel, after a conscientious review of the record, determines that it is appropriate to file an *Anders* brief along the lines set forth in *Gomez-Perez*, the Court must afford the defendant "an opportunity to raise pro se any issues he feels merit discussion." *Gomez-Perez*, 215 F.3d at 320 (citing *Anders*, 386 U.S. at 744). This is done by counsel's inclusion of an affidavit certifying that counsel has notified the client "that an *Anders* brief has been filed, which will likely result in affirmance, and that the client thereafter has 14 days to respond with any issues he believes are meritorious." *Id.* at 321 n.2. If

9

counsel files an *Anders* motion and the defendant "likewise fails to point to any non-frivolous issues pertaining to the plea agreement and appeal waiver, a Motions Panel will then review the record and determine whether it is appropriate to dismiss the appeal." *Id.*

For the reasons set forth below, the Court should grant defense counsel's *Anders* motion and the government's cross-motion to dismiss the appeal in the 2020 matter (No. 21-2166). In addition, because there are no non-frivolous issues implicated by the revocation of the defendant's supervised release or the sentencing in the 2014 matter, this Court should grant the government's motion for summary affirmance in the appeal from that case (No. 21-2224).

## A. The guilty plea in the 2020 matter

The government respectfully submits that the guilty plea was knowingly and voluntarily entered and that it complied with each of the requirements of Fed. R. Crim. P. 11. Specifically, the guilty plea transcript establishes that the defendant was of sound mind at the time of the guilty plea, *see* AA32–AA35; that under Fed. R. Crim. P. 11(b)(2) the district court "address[ed] the defendant personally in open court and determine[d] that the plea is voluntary and did not result from force,

threats, or promises (other than promises in a plea agreement)," *see* AA55–AA56; and that under Fed. R. Crim. P. 11(b)(3) there was a factual basis for the plea, *see* AA68–AA71. The record further establishes that the defendant was advised of each of the following as required under Fed. R. Crim. P. 11(b)(1), to the extent potentially applicable to this case:

(A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath, *see* AA37;

(B) the right to plead not guilty, or having already so pleaded, to persist in that plea, *see* AA40;

(C) the right to a jury trial, *see* AA40;

(D) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding, *see* AA40;

(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses, *see* AA41–AA43;

(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere, *see* AA43–AA44;

(G) the nature of each charge to which the defendant is pleading, *see* AA46–AA47, AA68;

(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release, *see* AA59–AA60;

(I) any mandatory minimum penalty, Not Applicable;

(J) any applicable forfeiture, Not Applicable;

(K) the court's authority to order restitution, *see* Not Applicable;

(L) the court's obligation to impose a special assessment, *see* AA60;

(M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), *see* AA61–AA64;

(N) the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence, *see* AA64–AA66; and

(O) that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future, *see* AA66–AA67.

In short, no non-frivolous basis exists to attack the defendant's guilty plea or the inclusion of his appellate waiver.

## B. The admission in the 2014 matter

If a defendant violates a condition of supervised release, the district court may continue, modify, or revoke the defendant's release status. *See* 18 U.S.C. § 3583(e).

The procedural rules governing revocation or modification of supervised release are set forth in Fed. R. Crim. P. 32.1. In substance, they

12

are: the right to receive written notice of the alleged violation; the disclosure of evidence against the defendant; the opportunity to appear and present evidence; the opportunity to question adverse witnesses; and the right to be represented by counsel. *See* Fed. R. Crim. P. 32.1(b)(2)(A)–(E); *United States v. Smith*, 982 F.2d 757, 763-64 (2d Cir. 1992).

The district court complied with Fed. R. Crim. P. 32.1. At the August 6, 2019 initial presentment, the district court informed the defendant of the nature of the charge by reviewing the written petition with him. GA27–GA28. The court also reviewed the defendant's constitutional rights to remain silent and to counsel. GA28. In light of state court proceedings, the matter was continued. GA30–GA32, GA35–GA36. At the conclusion of the hearing, the defendant remained on bond.

Similarly, on March 4, 2020, following his federal arrest for making interstate threats, the district court again informed the defendant of the nature of the charge by reviewing the new charges against him and the penalties he faced for the new charges as well as the related supervised release violation. GA44–GA45. The court also reviewed the defendant's constitutional rights to remain silent and his right to have counsel represent him. GA46–GA47.

Finally, at the August 19, 2021 revocation hearing, the district court summarized the pending violations for the defendant, AA81–AA86, confirmed his assistance of counsel, AA86–AA87, reminded him of his right to remain silent, AA88, and explained how the violation hearing process would work. AA87-AA88.

 Advised of these rights, represented by counsel, and having pleaded guilty in federal court to making interstate threats, the defendant admitted that he violated the terms and conditions of his release, specifically the charges related to his most recent criminal conduct as presented in the 2020 violation report. AA88–AA89.

Accordingly, there is no non-frivolous issue concerning the defendant's admission of the violations of supervised release.

## C. The consolidated sentencing & revocation proceedings

### 1. Sentence in the 2020 matter

No non-frivolous basis exists to attack the defendant's sentence. The district court ensured under Fed. R. Crim. P. 32(i)(1)(A) that the defendant and his counsel had read and discussed the presentence report. *See* AA90–AA91. It also ensured under Fed. R. Crim. P. 32(i)(1)(C) and (i)(4)(A) that the defendant was permitted to address any objections to

the presentence report and to address the court to speak or present any information to mitigate the sentence. *See* AA91–AA92, AA95–AA96, AA100–110.

The district court calculated a final offense level of 17 as follows: First, the district court found the base offense level to be 12 under U.S.S.G. § 2A6.1 of the United States Sentencing Guidelines. AA96. Next, it added an additional two levels because the offense involved more than two threats. AA96. The district court thereafter applied a six-level enhancement based on its finding that the offense involved conduct evidencing the defendant's intent to carry out the threat. In support of this finding, the district court discussed how the defendant, after threatening to appear at the victim's place of employment with the promise to hurt her, did appear as promised. Given that the defendant had to travel from Connecticut to New York in order to appear as threatened, and that he did so without permission of his probation officer, the district court determined that "the conduct certainly evidences an intent to carry out such [a] threat." AA96–AA97. In light of this enhancement, the district court calculated a total offense level of 20. AA97. After subtracting three levels

for acceptance, the district court arrived at a final offense level of 17. AA97.

The district court calculated a criminal history category of V, resulting in a guidelines range of 46 to 57 months. AA97–AA98. The district court then granted Scott's request for a downward departure under *United States v. Fernandez*, 877 F.2d 1138 (2d Cir. 1989) in light of the parties' plea agreement that did not contemplate the six-level enhancement, and thus, anticipated a lower Guidelines range of 27 to 33 months. AA98–AA99.

The district court ultimately sentenced the defendant to 33 months, AA119, which falls within the range of 33 months contemplated by the appeal waiver provision of his plea agreement. Because the defendant obtained the benefit of his bargain, his appeal waiver should be enforced and the instant appeal should be dismissed.

## 2. Sentence for the supervised release violation

A sentence imposed for violation of supervised release is reviewed for "reasonableness." *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) ("The standard of review on the appeal of a sentence for violation

of supervised release is now the same standard as for sentencing generally: whether the sentence imposed is reasonable."); *United States v. Fleming*, 397 F.3d 95, 99 (2d Cir. 2005). Reasonableness review is akin to a deferential "abuse of discretion" standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Watkins*, 667 F.3d 254, 260 (2d Cir. 2012); *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc).

This reasonableness review consists of two components: procedural and substantive review. *Cavera*, 550 F.3d at 189. "A district court commits procedural error where it fails to calculate the Guidelines range (unless omission of the calculation is justified), makes a mistake in its Guidelines calculation, or treats the Guidelines as mandatory." *Id.* at 190 (citations omitted). A district court also commits procedural error "if it does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *Id*. Finally, it is error if the district court "fails adequately to explain its chosen sentence," including, "'an explanation for any deviation from the Guidelines range.'" *Id*. (quoting *Gall*, 552 U.S. at 51).

When imposing a sentence for a violation of supervised release, a district court is required to consider the factors listed in 18 U.S.C.

17

§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). *See* 18 U.S.C. § 3583(e). In reviewing a court's compliance with this procedural requirement, this Court will "take a deferential approach and refrain from imposing any rigorous requirement of specific articulation by the sentencing judge." *Fleming*, 397 F.3d at 99.

When a defendant challenges a sentence as substantively unreasonable, he "bears a heavy burden" because the Court's review of "a sentence for substantive reasonableness is particularly deferential." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012). This Court will set aside a sentence on substantive grounds "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks omitted).

With respect to substantive reasonableness, this Court has recognized that "[r]easonableness review does not entail the substitution of our judgment for that of the sentencing judge." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). A sentence is substantively unreasonable only in the "rare case" where the sentence would "damage the administration of justice because the sentence imposed was shockingly

18

high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009).

In this case, the sentence for the supervised release violation imposed by the district court was both procedurally and substantively reasonable.

To begin, the district court clarified that it only intended to proceed with respect to the violations connected to the underlying federal matter (making an interstate threat) as opposed to the violations stemming from the separate state charges that remained pending. AA81–AA82.

Second, the district court correctly treated the defendant's violation as a Grade A, as opposed to a Grade B, violation. As the district court explained, it found the conduct to be a Grade A violation because the underlying offense, making an interstate threat, was a crime of violence. AA84–AA85. The district court explained that the "way it's defined in the statute and the way it's charged in the Indictment is a threat to injure." AA85. Therefore, as the underlying violation involved the threatened use of physical force against the person or property of another, the district court reasoned that the violation was for a crime of violence, making it a Grade A violation. AA84.

The district court, however, also correctly determined that whether the violation was Grade A or Grade B made little difference in terms of the resulting Guidelines range due to the statutory maximum term of imprisonment. As the district court explained, the Guidelines range for a Grade A violation, would be 30 to 37 months. Given the statutory maximum, the resulting Guidelines range for a Grade A violation was 24 months. The Guidelines range for a Grade B violation would be 18 to 24 months. AA85–AA86. Moreover, the district court explicitly stated that whether the violation was Grade A or Grade B, it would have imposed the same sentence. AA125.

Further, the district court's determination of the statutory maximum penalty was correct. Here, the defendant was convicted of making an interstate threat, in violation of 18 U.S.C. § 875(c). The statute does not specify the applicable felony grade. *Id.* Thus, the felony grade must be determined by examining the applicable statutory maximum sentence. *See* 18 U.S.C. § 3559(a).

The statutory range of imprisonment for an offense under 18 U.S.C. § 875(c) at the time of Scott's sentencing was "not more than 5 years . . ." 18 U.S.C. § 875 (2020). Accordingly, because the maximum sentence that

Scott faced at sentencing was less than 10 years but 5 years or more, he was convicted of a Class D felony. 18 U.S.C. § 3559(a)(4). The maximum term of imprisonment that could be imposed for a supervised release violation was therefore two years, as the district court correctly concluded. 18 U.S.C. § 3583(e)(3).

The record also makes clear that the district court considered the arguments and remarks of the government, the Probation Officer, and defense counsel, as well as the statements of the defendant, before imposing sentence on the supervised release violation. AA99, AA100–AA112, AA125. The court also considered the factors outlines in § 3553(a), including "the breach of the trust with the Court that is inherent in violating the terms of supervised release," and the need for the sentence imposed to reflect Scott's history and characteristics and the need to protect the public from further crimes by Scott. AA123–AA125. Having considered all of the factors, the district court determined that a 24-month sentence to run consecutively to sentence for the underlying conviction was the appropriate sentence. AA124–AA125. Such a sentence that was within the advisory guidelines.

Given the seriousness of the offense conduct—including the fact that the defendant committed another crime while he was awaiting a pending revocation hearing for a different crime—this sentence was hardly shockingly high such that it could be described as substantively unreasonable. Similarly, it was not unreasonable for the district court to impose the sentence for the supervised release violation consecutive to the sentence for the underlying conviction. As correctly noted by the district court, "[t]he guidelines do recommend a consecutive sentence." AA125. And while the district court properly acknowledged that it does not always impose a consecutive sentence for a supervised release violation, it appropriately exercised its discretion to do so in the instant matter, citing "the need to protect the public and the nature and circumstances of the offense conduct." AA125.

In sum, there were no procedural errors in this case, and under all of the circumstances, this is not a "rare case" where the sentence damaged the administration of justice because it was shockingly high or otherwise unsupportable as a matter of law. Rather, the record reflects that the sentence was both procedurally and substantively reasonable.

## Conclusion

The defendant knowingly and voluntarily entered a plea agreement that contained a valid and enforceable waiver of his appellate rights. Because the defendant received a sentence that triggered the appeal waiver, that waiver is enforceable. Further, as discussed above, there are no non-frivolous challenges to the revocation proceedings.

Defense counsel has filed a brief pursuant to *Gomez-Perez* and certified that he sent that brief to his client. *See* Doc. Nos. 58, 70. Moreover, the Presentence Report, the guilty plea colloquy, and the sentencing disclose that the defendant speaks and reads English, so the written notice provided by counsel is adequate. *See Leyba*, 379 F.3d at 55–56; *Santiago*, 495 F.3d at 30.

Accordingly, the Court should grant defense counsel's *Gomez-Perez* motion to withdraw and the government's cross-motion for dismissal and for summary affirmance.

Dated: July 15, 2022

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s/


NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3700

STATE OF CONNECTICUT

ss: NEW HAVEN

COUNTY OF NEW HAVEN

## AFFIDAVIT

I, NATASHA M. FREISMUTH, state as follows:

1. I am an Assistant United States Attorney for the District of Connecticut. I represent the United States in the captioned appeal, and I am admitted to practice before this Court.

2. I make this affidavit in support of the Government's cross motion for dismissal and summary affirmance.

3. The facts in the Government's memorandum attached to this motion are true and correct to the best of my knowledge and belief.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 15, 2022

AFFIANT

NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY

25

## Federal Rule of Appellate Procedure 26.1 Disclosure Statement

In this criminal case, there are no organizational victims.

**/s/**


NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY

**Federal Rule of Appellate Procedure 32(g) Certification**

This is to certify that the foregoing motion complies with the 5,200-word limitation of Federal Rule of Appellate Procedure 27(d)(2)(A), in that the motion is calculated by the word processing program to contain approximately 4,628 words, excluding the affidavit, the Rule 26.1 Disclosure Statement, and this certification.

/s/

NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY

## CERTIFICATE OF SERVICE

This is to certify that on July 15, 2022, a copy of the foregoing motion and memorandum of law was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____**/s/**_____
NATASHA M. FREISMUTH
ASSISTANT U.S. ATTORNEY